**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **DONNA CHISESI, AS INDEPENDENT** | ) |
| **ADMINISTRATRIX OF THE ESTATE** | ) |
| **OF JONATHAN VICTOR, DECEASED,** | ) |
| | ) |
| **Plaintiff** | ) **CASE NO.: 1:19-cv-00221-C** |
| | ) |
| **v.** | ) |
| | ) |
| **MATTHEW HUNADY, in his** | ) |
| **individual capacity, as a Baldwin County,** | ) |
| **Alabama, Sheriff's Deputy, and HUEY** | ) |
| **HOSS MACK, in his individual capacity, as** | ) |
| **the Sheriff of Baldwin County, Alabama** | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO THEIR MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants Matthew Hunady and Sheriff Huey Hoss Mack and file this Reply to Plaintiff's Response to their Motion for Summary Judgment, as follows:

## INTRODUCTION

The Pulitzer prize winning journalist, John Archibald, wrote an opinion column entitled *We Demand It All and Mourn When They Give It*, for AL.com on January 22, 2019 in response to the senseless deaths of Mobile officer Sean Tuder and Birmingham Sergeant Wytasha Carter. In it, Archibald makes several salient observations regarding law enforcement and how society views them; he writes:

> We ask that they run toward danger as others run away, that they run faster and stand stronger and never, ever make mistakes.
>
> We hold them to the highest of standards, for in the darkness and danger a split second trigger pull can end their lives, or someone else's. We train them and arm them and implore them to make only the best decisions as sirens flash and people shout through the chaos of a crime scene.

We expect them to make no error, and mount cameras on their bodies so we can judge them when they do. We criticize them when things go wrong, and rarely see the many moments – the investigations and uneventful arrests and prosecutions and the times when everyone simply walks away – when things go right.

We want them to be Sherlock Holmes and Clint Eastwood and Sigmund Freud and Solomon all rolled up into one.

We want them to be warriors, and diplomats, and scientists, and athletes, and politicians, and saints, and we pay them like laborers. We want them to be superhuman, and we forget, too often, that they are just people, with families, and children, and loves and losses and dreams for the future.

This column encapsulates the reason why there is qualified immunity. The job of law enforcement officers is tireless and thankless, and officers should not be second-guessed at every opportunity. This case especially calls for qualified immunity because Mathew Hunady was thrust into a no-win situation. While the result is tragic, and it is discomforting to point to the actions of the deceased, the ultimate result was dictated by the unpredictable actions of Jonathan Victor. Victor's actions caused first responders to believe he had a weapon and call law enforcement for assistance. It was Victor who did not respond to Hunady's attempts to establish verbal communication; it was Victor who wrapped a jacket around his hands to conceal what he was holding in his hand; it was Victor who postured as though he was holding a pistol; it was Victor who disregarded multiple commands to stop advancing on Hunady; and it was Victor who disregarded multiple commands to drop the object in his hands. Hunady made the best decision that he could under the rapidly evolving circumstances that he confronted. He and therefore, Sheriff Mack, should not be held liable for the alleged constitutional violations.

## ARGUMENT

A legally educated reader need look no further than the introduction to Plaintiff's response to summary judgment to determine the response pays no heed to the United States Supreme Court's seminal holding that "[t]he 'reasonableness' of a particular use of force must be judged from the

2

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). For example, Plaintiff's introduction faults Deputy Hunady's actions by pointing out the "undisputed" fact that Victor had no drugs or alcohol in his system. (Doc. 37 – PageID.739.) These facts, however, while undisputed at the time of this lawsuit, were unknown to Deputy Hunady at the scene and remained unknown until the results of post-mortem testing. Plaintiff's introduction, additionally, faults Hunady's actions based on the "undisputed" facts that Victor "was not the subject of an outstanding warrant," "had no criminal history," and "had not committed a crime and was not committing a crime." (Doc. 37 – PageID.739.) Similarly, while undisputed at this time, the facts were unknown to Hunady at the scene because Victor's identity had not been confirmed at the scene. At most, law enforcement officials could confirm that Victor was the owner of the vehicle by running the vehicle tag. Even then, it was unknown at the scene whether it was the owner inside the vehicle, the vehicle had been loaned by the owner, or even that the vehicle had been stolen or used in a crime, which was not beyond the scope of reason given Victor's unusual behavior at the scene.

Additionally, Plaintiff's response points out that Victor had no drugs or alcohol in his possession. (Doc. 37 – PageID.739.) While unclear why these facts hold any significance, they are facts that were unknown to Deputy Hunady prior to his decision to discharge his weapon. Due to dark tinting on the windows, Deputy Hunady was unable to see into the vehicle. (Doc. 29-2, PageID.239; Doc. 29-15, PageID.384), and Hunady certainly lacked the opportunity to conduct a pat-down search prior to having to make a decision whether to discharge his weapon as Victor approached. Plaintiff's introduction points out that Victor "was injured and covered in blood." (Doc. 37 – PageID.739.) However, in the absence of the retrospective knowledge that Victor would burst from his car, hold a concealed object in his hand, posture as though he was holding a pistol,

and advance on Hunady, the fact that Victor was injured and bloody at the very least indicated the immediacy of a need for medical assistance. Plaintiff, nonetheless, in retrospect criticizes Deputy Hunady's attempt to establish verbal communication upon his arrival and ask Hunady to get out of the vehicle so he could receive help.

Significantly, Plaintiff's introduction points out the ultimate retrospectively learned fact: Victor "had no weapon." (Doc. 37 – PageID.739.) Of course, Plaintiff seeks to impose this knowledge at the scene because the issue in this case ultimately boils down to a single inquiry under a qualified immunity analysis: could a reasonable officer in Hunady's situation have believed Victor was holding a pistol as he advanced. Ignoring the clear direction from *Graham*, Plaintiff's response engages in a retrospective frame-by-frame analysis of Victor's emergence from his vehicle and approach on Hunady that contains her attorney's observations obtained using a stop-time review of video evidence. (Doc. 37 – PageID.747-750.) Deputy Hunady while making decisions at the scene, however, did not have the luxury of stopping the events, replaying the events, or having time to contemplate the events as Plaintiff's counsel sitting comfortably behind the safety of a video monitor. Such observations and analysis reach far beyond the limits on respective review of officers' actions at the scene imposed by *Graham*.

Referencing without reiterating the opinions cited in Defendants' initial brief, the scales of objective reasonableness and clearly established law tip in the favor of Deputy Hunady. In consideration of page limitations, Defendants address only one of the errors in Plaintiffs' analysis of case law: all comparison to cases cited in Defendants' initial brief "fail for the same reason . . . the suspect had a weapon." (Doc. 37 – PageID.759.) The most obvious error is that in *Davidson v. Opelika*, the individual was holding a wallet. 675 F. App'x 955, 956-57 (11th Cir. 2017). Plaintiff's response accurately observes that *Davis v. Edwards* involved a suspect with a BB pistol but omits

that fact that the court "assumed that [the officer] did not see a gun before he fired his weapon."
779 F. App'x 691, 693 (11th Cir. 2019).

It is also worth noting that Plaintiff's introduction with bold hypocrisy accuses Defendants
of "cherry-picking" facts, and then within two paragraphs asserts that Deputy Hunady was called
to the scene for purely for welfare concerns, (Doc. 37 – PageID.739), while omitting the
undisputed and material fact that dispatch changed the call status to "1033," an emergency call
situation meaning subject is armed, and informed Hunady that Victor was possibly armed.
(Doc. 29-1, PageID.206-207; Doc. 29-2, PageID.236; Doc. 29-11, PageID.375.) Additionally, the
first paragraph of the following page falsely asserts that "no responder or civilian ever mentioned
seeing a weapon of any kind." (Doc. 37 – PageID.740.) This assertion completely ignores sworn
testimony from first responders that they believed they saw Victor holding or retrieving a weapon
or pistol. (PageID.319; PageID.316-317; Doc. 29-7, PageID.323.) Moreover, Plaintiff's response
entirely ignores statements made to Plaintiff's own investigator by a civilian witness expressly
stating his belief that he had indeed seen Victor holding and pointing a gun at him and a firefighter
while attempting to provide Victor aid. (Doc. 29-8, PageID.328-329; *see also* Doc. 29-9,
PageID.358.)

Plaintiff then misrepresents that "Deputy Hunady testified that he never saw a weapon or
anything that looked like a weapon." (Doc. 37 – PageID.740.) Given the fact that in retrospect it
became obvious that Victor was not actually holding a pistol in his hands, of course, Hunady
testified at his deposition that he never saw a weapon. Given the fact that in retrospect it became
obvious that Victor was concealing a fanny-pack under the jacket rather than a pistol, of course,
Hunady testified that he never saw anything that looked like a weapon. Plaintiff's counsel has
engaged in trickery in an attempt to put Hunady in a catch-22. Indeed, if Hunady had testified at

his deposition that he had seen a pistol or an object resembling a pistol at the scene, Plaintiff's counsel would now be calling him a liar. Because Hunady testified truthfully about matters revealed in retrospect, Plaintiff's counsel attempts impose Hunady's retrospective knowledge at the scene of the incident giving rise to this lawsuit. Importantly, Plaintiff ignores the heart of Hunady's testimony – that he believed that Victor had a weapon. Rightfully, *Graham* does not permit officers' retrospectively-learned knowledge to be used against them when determining the objective reasonableness of their actions at the scene.

Plaintiff's Response to Summary Judgment borrows from the famous scene from the *Wizard of Oz* when the travelers discover the identity of the Wizard and find out that he is a fraud. When discovered, the Wizard exclaims, "Pay no attention to that man behind the curtain!" Likewise, the Plaintiff is exclaiming to this Court, "Pay no attention!" to the fact that witnesses believed that Jonathan Victor was armed and fled for cover upon contacting him; "Pay no attention!" to the fact that dispatch issued and Corporal Hunady answered a "1033" call, meaning that the subject was armed; "Pay no attention!" to the fact that Victor was reportedly injured in his vehicle and could not receive medical attention until he emerged; "Pay no attention!" to the fact Corporal Hunady implored Victor to get out of the car so that he could get help; "Pay no attention!" to the fact that the scene occurred on Interstate 10 with numerous stranded motorists nearby; and "Pay no attention!" to the fact that upon exiting his vehicle, Victor stood with his hands covered in a shooting-type stance. Instead, Plaintiff wants this Court's attention diverted to the minutia that Hunady shouted "Drop it!" as Victor advanced rather than "Drop the weapon!" or that he did not summon a crisis management team to the side of the interstate, assuming that one was even available. Mostly Plaintiff wants this Court to ignore that Victor controlled the entire scene and through his actions dictated the response.

The undisputed evidence shows that Hunady was thrust into the scene without the benefit of 20/20 hindsight. He reasonably could not have allowed Victor to remain in his car, as Plaintiff suggests, because he did not know the extent of Victor's injuries. He could not allow Victor to advance as if he had a weapon, when there were scores of innocent bystanders who could have been injured, if Victor had a gun. Plaintiff not only looks back at this incident with the benefit of 20/20 hindsight but is asking this court to view Hunady's conduct under a microscope. She asks for this review because when this Court views the circumstances from the eyes of a reasonable officer on the scene, the conclusion is that Hunady acted reasonably.

WHEREFORE, THESE PREMISES CONSIDERED, Defendants Matthew Hunady and Sheriff Huey Hoss Mack hereby respectfully request that this Court grant them summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Respectfully submitted this 22nd day of February, 2021.

**/s/J. Randall McNeill**
J. RANDALL MCNEILL (ASB-4841-E29J)
FRED L. CLEMENTS, JR. (ASB-5682-R39C)
Attorneys for Defendants Sgt. Matthew Hunady
and Sheriff Huey "Hoss" Mack.
WEBB MCNEILL WALKER PC
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama 36124
(334) 262-1850 – T
(334) 262-1889 – F
rmcneill@wmwfirm.com
fclements@wmwfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 22nd day of February 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jack Samuel Tenenbaum
Northwestern Pritzker University School of Law
375 E. Chicago Ave.
Chicago, IL 60611
(312) 953-7185 T
s-tenenbaum@law.northwestern.edu

**/s/J. Randall McNeill**
OF COUNSEL

8