[DO NOT PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 21-11700

_____

DONNA CHISESI,
As Independent Administratrix of the Estate of Jonathon
Victor, Deceased,

                                                             Plaintiff-Appellee,

*versus*

MATTHEW HUNADY,
Individually and in his official capacity,
HUEY HOSS MACK,

                                                             Defendants-Appellants,

BALDWIN COUNTY SHERIFF'S OFFICE,

Case 1:19-cv-00221-C   Document 44   Filed 04/16/24   Page 2 of 20   PageID #: 834
USCA11 Case: 21-11700   Document: 51-1   Date Filed: 04/16/2024   Page: 2 of 18

2                Opinion of the Court                21-11700

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:19-cv-00221-C

_____

Before LAGOA and BRASHER, Circuit Judges, and BOULEE,* District Judge.

PER CURIAM:

This case concerns the shooting death of Jonathan Victor. Officer Matthew Hunady, a deputy with the Baldwin County Sheriff's Office, responded to the scene of a single-car accident where the driver—Victor—was behaving erratically. Following a ten-minute stand-off, Officer Hunady shot and killed Victor. Donna Chisesi, the administratrix of Victor's estate, filed suit under 42 U.S.C. § 1983, bringing claims for excessive force and wrongful death against Officer Hunady and for supervisory liability on a failure to train theory against Baldwin County Sheriff Huey Hoss Mack. The district court denied Officer Hunady and Sheriff Mack's motion for summary judgment on qualified immunity grounds, and this interlocutory appeal followed. After oral argument and

---

* Honorable J. P. Boulee, United States District Judge for the Northern District of Georgia, sitting by designation.

Case 1:19-cv-00221-C   Document 44   Filed 04/16/24   Page 3 of 20   PageID #: 835
USCA11 Case: 21-11700   Document: 51-1   Date Filed: 04/16/2024   Page: 3 of 18

21-11700                Opinion of the Court                3

careful consideration, we dismiss Officer Hunady's appeal for lack of jurisdiction and reverse the district court's denial of qualified immunity with respect to Sheriff Mack.

## I.    FACTUAL BACKGROUND

The outcome of cases involving qualified immunity "depends very much on the facts of each case." *Brosseau v. Haugen*, 543 U.S. 194, 201 (2007). Notably, "[t]he 'facts' at the summary judgment stage are not necessarily the true, historical facts" because "they may not be what a jury at trial would, or will, determine to be the facts." *Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020). "Instead, the facts at this stage are what a reasonable jury could find from the evidence viewed in the light most favorable to the non-moving party . . . ." *Id.* Accordingly, we view the record in the most pro-Chisesi light possible while staying within the realm of reason.

On May 12, 2017, Victor was involved in a single-vehicle accident on Interstate 10 in Alabama. Volunteer firefighters and paramedics arrived first to assist Victor. When firefighter Michael Tobias approached Victor, he refused to roll down his window. Through the window, Tobias noticed that Victor's hands were wrapped in cloth and that they appeared to be bleeding. Tobias also noticed that Victor was acting strangely and aggressively. As a result, Tobias backed away from Victor's vehicle and called the Baldwin County Sheriff's Office for assistance.

Meanwhile, a paramedic also approached Victor's vehicle. Victor shouted at the paramedic to leave. Significantly, the

Case 1:19-cv-00221-C   Document 44   Filed 04/16/24   Page 4 of 20   PageID #: 836
USCA11 Case: 21-11700   Document: 51-1   Date Filed: 04/16/2024   Page: 4 of 18

4                           Opinion of the Court                    21-11700

paramedic believed that he saw a weapon in Victor's lap. Consequently, the paramedic and all others on scene retreated, took cover behind a parked vehicle, and waited for law enforcement to arrive.

Upon speaking with the 911 operator, the Baldwin County Sheriff's Office dispatched to responding officers the following information about Victor: (1) he was approximately 30 years old and had barricaded himself in his vehicle; (2) first responders had seen a weapon on his lap[1] and were backing away from him; (3) he was covered in blood and had his arm wrapped; (4) he had jumped in the back of the vehicle and grabbed something, but they could not tell what it was; (5) he was not compliant with instructions; and (6) he was talking to himself.

Officer Hunady self-dispatched to the scene of Victor's single-vehicle accident. Officer Hunady is a seasoned law enforcement officer with approximately twelve years of experience. His initial law enforcement training was twenty-five weeks long, and the Baldwin County Sheriff's Office conducts at least four training sessions per year for active officers. The Baldwin County Sheriff's Office, however, does not offer specific training programs in these three areas: (1) crisis intervention, (2) de-escalation techniques, and

---

[1] Although the dispatcher for the Baldwin County Sheriff's Office relayed to responding officers that the first responders saw a weapon on Victor's lap, the 911 operator had only told the dispatcher that they *thought* they saw a weapon on Victor's lap.

Case 1:19-cv-00221-C   Document 44   Filed 04/16/24   Page 5 of 20   PageID #: 837
USCA11 Case: 21-11700   Document: 51-1   Date Filed: 04/16/2024   Page: 5 of 18

21-11700                Opinion of the Court                5

(3) engaging with persons who are suicidal or otherwise under acute mental distress.

Upon Officer Hunady's arrival, first responders confirmed to Officer Hunady at least some of the information that he had initially received over dispatch. More specifically, one first responder told Officer Hunady that Victor was wide-eyed, acting irrationally, talking to himself, and possibly armed.

With rifle in hand and aimed at Victor's vehicle, Officer Hunady positioned himself behind a firetruck that was about fifteen to twenty yards away. For roughly ten minutes, Officer Hunady shouted to Victor that he was with the Sheriff's Office, that he needed Victor to come out of the vehicle with his hands up, and that the officers were there to help him. Rather than comply with these instructions, Victor moved around in his vehicle. During this time, Officer Hunady could not determine what Victor was doing.

After ten minutes, Victor stepped out of the passenger side of his vehicle — the side closest to the officers. The dispute central to this case arose here. When Victor emerged from the vehicle, he was holding his arm at an unusual angle with something wrapped around his hand. Officer Hunady says that Victor took an aggressive, shooter's-type stance, with his arms punched out in front of his chest as if he were aiming a concealed object at the officers. Because of Victor's posture, Officer Hunady says he believed that Victor was armed with a weapon. Chisesi contests Officer Hunady's recollection and says that Victor never took a shooter's-type stance or punched his arms out as if he were holding a gun. Instead, based

on the video, Chisesi says that Victor was holding his arm because it was injured, and that Victor's arm was wrapped in cloth because it was bleeding. The district court, upon reviewing video footage of the incident, concluded that a reasonable jury could agree with either party's version of events.

Approximately thirty to forty seconds after exiting his vehicle, Victor began slowly to walk up an embankment toward Officer Hunady and other officers, who were behind a firetruck on the interstate. Officer Hunady can be heard on video shouting these commands while Victor was moving toward the officers:

> Drop what's in your hands. Drop what's in your hands. Drop it. Drop it. Drop it right now and put your hands up. We're just here to help you, man. We're just here to help you. Drop whatever you got in your hand, dude. Drop it. Drop it. Put your hands up, man. We're just here to help you. Put it down, dude. Put it down. Don't advance. Do not advance. Do not advance. Stand right there. Man, don't f****** do it. Put it down, put it down. Put it down right now. Put it down. Put it down. Put it down. Put it down.

Victor can at one point be heard responding, "No, you drop it." After the last "put it down," Officer Hunady fired four shots at Victor, killing him. Later investigation revealed that Victor was not armed—he was holding a fanny pack that he wrapped with a rain jacket.

We do not know from the videos or the rest of the record exactly how Victor reacted, physically, to Officer Hunady's commands. The videos do not answer that question because, as he began to advance toward the officers, the view of the cameras that recorded much of the incident became blocked by the firetruck behind which the officers were hiding. Testimony does not resolve the issue, either. Officer Hunady says that, in the moments leading up to the shooting, Victor never put down what was in his hands, never stopped advancing, and never put his hands up. An eyewitness testified, however, that Victor was "just standing there" when Officer Hunady opened fire.

## II.     PROCEDURAL HISTORY

As the administratrix of Victor's estate, Chisesi filed a 42 U.S.C. § 1983 lawsuit against Officer Hunady and Sheriff Mack. Chisesi alleged excessive force and wrongful death in violation of the Fourth Amendment against Officer Hunady. As to Sheriff Mack, Chisesi alleged failure to properly train and supervise deputy sheriffs in responding to injured individuals who display signs of an altered state of mind.[2]

Officer Hunady and Sheriff Mack moved for summary judgment on qualified immunity grounds. The district court denied their motions.

---

[2] Chisesi also brought a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against Sheriff Mack. That claim is not before us in the instant appeal.

In analyzing whether Officer Hunady was entitled to qualified immunity, the district court discussed whether he violated Victor's constitutional right to be free from excessive force and whether that right was clearly established at the time of the shooting. As to the first element, the district court concluded that a jury could find that Officer Hunady's use of deadly force was unconstitutional based, in large part, on its interpretation of the video evidence of the shooting. Specifically, the district court concluded that a reasonable jury could view the video recordings of the shooting and find that Victor was neither aggressive nor threatening to Officer Hunady or to others on scene. At bottom, the district court held that a reasonable jury could find that Officer Hunady violated the Fourth Amendment by unreasonably using deadly force in a situation that posed no immediate threat. As to the second element—whether the constitutional violation was clearly established—the district court concluded that Chisesi met her burden because, if Victor was not threatening, "the standard for excessive force is clearly established" and Officer Hunady's conduct was obviously unconstitutional.

Likewise, the district court determined that Sheriff Mack was not entitled to immunity on the failure to train claim. In reaching this conclusion, the district court concluded that Sheriff Mack failed to train his deputies in dealing with barricaded subjects, subjects in mental health crises, and the use of de-escalation tactics and strategies. Even though Chisesi did not show a pattern of similar constitutional violations that would put Sheriff Mack on notice that his training programs were deficient, the district court still

determined that qualified immunity was unavailable to Sheriff Mack because the shooting that occurred here "is the kind of recurring situation presenting an obvious, highly predictable potential for violation that can trigger liability for failure to train, even in the absence of a pattern of violations." The district court did not analyze the clearly established prong as it applied to the claim asserted against Sheriff Mack.

Officer Hunady and Sheriff Mack appealed the district court's denial of their motions for summary judgment.

### III. THE APPELLATE JURISDICTION ISSUE

Before proceeding further with this appeal, we must first determine whether we have appellate jurisdiction. *See Patel v. City of Madison*, 959 F.3d 1330, 1337 (11th Cir. 2020) (the Court must *sua sponte* examine whether appellate jurisdiction exists). As a general rule, only orders that dispose of all claims against all parties are appealable. *Id.* Exceptions exist, however. Indeed, we often have appellate jurisdiction to review the denial of summary judgment on qualified immunity grounds, depending on which issues are part of the appeal. *Cottrell v. Caldwell*, 85 F.3d 1480, 1484 (11th Cir. 1996). More specifically,

> when legal questions of qualified immunity are raised—either to determine whether any constitutional right was violated or whether the violation of that right was clearly established—interlocutory appellate jurisdiction exists. But if the only question

Case 1:19-cv-00221-C   Document 44   Filed 04/16/24   Page 10 of 20   PageID #: 842
USCA11 Case: 21-11700   Document: 51-1   Date Filed: 04/16/2024   Page: 10 of 18

10                        Opinion of the Court                     21-11700

> before the appellate court is a factual one, review must wait for a later time.

*Hall v. Flournoy*, 975 F.3d 1269, 1276 (11th Cir. 2020).

In summary judgment parlance, *Hall* means that we have appellate jurisdiction over appeals that contest whether a factual dispute is "material"—i.e., whether the resolution of that dispute will affect the ultimate legal conclusion of whether a defendant is liable. *See* Fed. R. Civ. P. 56(a). But we have no jurisdiction over appeals that contest only whether a factual dispute is "genuine"—i.e., whether a reasonable jury could decide the factual question in favor of the non-moving party. *See id.* So when the parties are fighting about the genuineness of a factual dispute—but do not contest that factual dispute's materiality to the outcome of the case—we lack appellate jurisdiction over the denial of a qualified-immunity summary judgment motion. *Hall*, 975 F.3d at 1276.

Applying the *Hall* standard to this appeal, we conclude (1) that we lack appellate jurisdiction over Officer Hunady's appeal because he contests only whether a reasonable jury could credit Chisesi's view of the evidence, and (2) that appellate jurisdiction exists for Sheriff Mack's appeal because his appeal raises legal questions.

We will start with Officer Hunady's appeal. There is a factual dispute as to whether Victor displayed aggressive, shooter's-type behavior after exiting the vehicle and advancing toward the officers. Chisesi says, and the district court agreed, that a reasonable jury could agree with her that Victor did not behave in a

Case 1:19-cv-00221-C   Document 44   Filed 04/16/24   Page 11 of 20   PageID #: 843
USCA11 Case: 21-11700   Document: 51-1   Date Filed: 04/16/2024   Page: 11 of 18

21-11700                Opinion of the Court                    11

threatening or aggressive manner. The district court thus concluded that the factual dispute was genuine. The district court then concluded that the dispute was material because a jury agreeing with Chisesi's version of events could find that Officer Hunady's shooting of Victor was unjustified and in violation of clearly established law.

Officer Hunady contests only the district court's conclusion that a jury could agree with Chisesi's account of the incident. Officer Hunady's opening brief can be condensed into the following argument: The district court should be reversed because it "erroneously concluded that a" reasonable jury could disagree with Officer Hunady's contentions that "Victor appeared to pose an imminent threat of serious physical harm," or that it was at least "reasonable for him to believe that Victor was [a] danger[] to him," because "Victor stood in an aggressive shooting stance." Critically, Officer Hunady at no point argues on appeal that he did not violate clearly established law even if Victor were not threatening the officers. He thus concedes, at least at this stage, that the outcome of the appeal turns on whether a jury could find as a matter of fact that Victor did not behave in a threatening and aggressive manner. Under Officer Hunady's logic, if a jury finds that Victor was threatening the officers, then there is qualified immunity; if the jury finds that Victor was not threatening the officers, then there is not. Accordingly, "all we are left with is the factual review of what happened—was [Chisesi's] version of events right, or was [Officer Hunady's]?" *Hall*, 975 F.3d at 1277. We lack jurisdiction over that kind of appeal.

Case 1:19-cv-00221-C   Document 44   Filed 04/16/24   Page 12 of 20   PageID #: 844
USCA11 Case: 21-11700   Document: 51-1   Date Filed: 04/16/2024   Page: 12 of 18

12                     Opinion of the Court                21-11700

Officer Hunady says his appeal should be treated differently because most of the incident was captured on video. We disagree. The Supreme Court has held that, when a video "utterly discredit[s]" the nonmovant's version of events, a court may rely on that video to resolve factual disputes in a movant's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007). In *Scott*, the lower courts ignored a video in resolving a motion, which presented a legal question for review on appeal i.e., how should courts evaluate video evidence. But the district court here reviewed the video and concluded that the video does not "utterly discredit" Chisesi's contention that Victor was not threatening Officer Hunady and the other officers. In this posture—with Officer Hunady presenting no legal issues for us to resolve—we cannot review that conclusion by the district court. *See Hall*, 975 F.3d at 1278.

In fact, we recently dismissed a qualified immunity appeal involving a video in nearly identical circumstances to those presented by Officer Hunady's appeal. *See English v. City of Gainesville*, 75 F.4th 1151 (11th Cir. 2023). In *English*, police officers appealed a denial of qualified immunity, arguing that their actions were justified because a suspect "posed an immediate threat of serious physical harm." *Id.* at 1156. Whether the suspect had posed a threat was a disputed fact. *Id.* The district court reviewed videos of the incident and concluded that a reasonable jury could watch the videos and agree with either side. *Id.* We said that "this is the type of ruling we lack jurisdiction to review." *Id.* There is no meaningful difference between the appeal in *English* and Officer Hunady's appeal. As in *English*, the only purported error Officer Hunady asks

Case 1:19-cv-00221-C   Document 44   Filed 04/16/24   Page 13 of 20   PageID #: 845
USCA11 Case: 21-11700   Document: 51-1   Date Filed: 04/16/2024   Page: 13 of 18

21-11700               Opinion of the Court                  13

us to review—whether the district court correctly interpreted the video—is a factual one. Under *English*, and entirely consistent with *Scott*, we lack jurisdiction to make that call at this stage of the litigation.

Sheriff Mack's appeal is a different (and simpler) story. The facts underlying that claim are not in dispute. Instead, the centerpiece of Sheriff Mack's appeal is that the district court reached the wrong legal conclusion, even if all of Chisesi's factual contentions are treated as true. Specifically, Sheriff Mack argues that he cannot be held liable for his failure to train Officer Hunady, even if Officer Hunady violated Victor's clearly established constitutional rights. Sheriff Mack's argument is thus precisely the type of argument appropriate to invoke our interlocutory jurisdiction. Accordingly, we will review Sheriff Mack's appeal.

We note that there is no significant overlap in the facts underlying each party's appeal. Whether a reasonable jury could conclude that Victor was acting in a threatening and aggressive manner after the car accident says nothing about whether Sheriff Mack sufficiently trained his officers to de-escalate encounters with suspects experiencing mental health crises. So we need not address whether we would have jurisdiction over Officer Hunady's appeal if it relied on fact disputes that we would need to address as part of answering Sheriff Mack's legal arguments.

## IV.   STANDARD OF REVIEW

Now that we are satisfied that we have jurisdiction over Sheriff Mack's interlocutory appeal, we review *de novo* the denial of

Case 1:19-cv-00221-C   Document 44   Filed 04/16/24   Page 14 of 20   PageID #: 846
USCA11 Case: 21-11700   Document: 51-1   Date Filed: 04/16/2024   Page: 14 of 18

14                     Opinion of the Court                     21-11700

his motion for summary judgment. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013). "When considering a motion for summary judgment, including one asserting qualified immunity, 'courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, [courts must] credit the nonmoving party's version.'" *Id.* at 1252 (quoting *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006)). Ultimately, summary judgment is appropriate if the evidence before the court shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## V.   ANALYSIS

We begin our analysis with a review of the law on qualified immunity. This doctrine "protects public officers 'from undue interference with their duties and from potentially disabling threats of liability.'" *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)). Indeed, "[t]he qualified immunity defense shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *Harlow*, 457 U.S. at 818). Qualified immunity protects "'all but the plainly incompetent or those who knowingly

21-11700               Opinion of the Court                    15

violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"[T]o establish qualified immunity, [a law enforcement officer] first must show that [he] was acting within the scope of [his] discretionary authority at the time of the alleged misconduct." *Paez*, 915 F.3d at 1284. After the initial showing is made,[3] "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* The plaintiff must then show two things: (1) that the law enforcement officer violated a constitutional right and (2) that this right was clearly established at the time of the alleged violation. *Id.* Significantly, an officer loses qualified immunity only if both elements of the test are satisfied. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010).

Turning to Sheriff Mack's appeal, the district court determined that Sheriff Mack was not entitled to qualified immunity on the failure to train claim. Even though Chisesi failed to show a pattern of similar constitutional violations, the district court determined that such evidence was unnecessary, reasoning that this was the kind of recurring situation that presents an obvious, highly predictable potential for a constitutional violation. We disagree.

Chisesi contends that Sheriff Mack is liable under § 1983 because he failed to train the deputies on barricaded subjects, subjects experiencing mental health crises, and de-escalation tactics and

---

[3] Here, it is undisputed that Officer Hunady and Sheriff Mack were acting within their discretionary authority.

Case 1:19-cv-00221-C   Document 44   Filed 04/16/24   Page 16 of 20   PageID #: 848
USCA11 Case: 21-11700   Document: 51-1   Date Filed: 04/16/2024   Page: 16 of 18

16                        Opinion of the Court                      21-11700

strategies. As an introductory matter, it is important to note that a supervisor's "'culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1053 (11th Cir. 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

A supervisor can be held liable for failure to train under § 1983 "'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'" *Id.* at 1052 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference is an exacting standard, requiring proof that a supervisor "disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61. This means that a plaintiff alleging a constitutional violation "must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizen's constitutional rights,' and that armed with that knowledge the supervisor chose to retain the training program." *Keith*, 749 F.3d at 1052.

A supervisor may be put on actual or constructive notice of deficient training in two ways. Ordinarily, a plaintiff must show "'[a] pattern of similar constitutional violations by untrained employees.'" *Id.* at 1053 (alteration in original) (quoting *Connick*, 563 U.S. at 62). Alternatively, a plaintiff may show actual or constructive notice "without evidence of prior incidents, if the likelihood for constitutional violation is so high that the need for training would be obvious." *Lewis*, 561 F.3d at 1293. But this second

Case 1:19-cv-00221-C   Document 44   Filed 04/16/24   Page 17 of 20   PageID #: 849
USCA11 Case: 21-11700   Document: 51-1   Date Filed: 04/16/2024   Page: 17 of 18

21-11700               Opinion of the Court                   17

option—using a single incident as the basis for liability—is available in only a "narrow range of circumstances." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997). The Supreme Court hypothesized that a supervisor could be liable without a prior pattern of constitutional violations if, for example, he armed his police force with firearms and deployed the police—without any training—into the public to capture fleeing felons. *Connick*, 563 U.S. at 63–64 (citing *City of Canton*, 489 U.S. at 390 n.10).

Moreover, a single incident is unlikely to give rise to liability for failure to train where the underlying practice "does not carry a high probability for constitutional violations" or where its omission from the training program at issue is not "'glaring.'" *Lewis*, 561 F.3d at 1293 (quoting *Brown*, 520 U.S. at 410). So liability on this basis is rare.

In this case, the § 1983 claim asserted against Sheriff Mack rests solely on a single incident—the shooting of Victor—rather than a pattern of unconstitutional conduct. Even if Officer Hunady committed a constitutional violation, the "narrow circumstances" that justify imposing liability on Sheriff Mack for failure to train on the basis of a single incident are not present here. Chisesi presented evidence that from 2015 to 2018, there were at least 1,000 officer-involved shootings in the United States where the subject appeared to be in a mental health crisis. Although this evidence shows the possibility of recurring situations involving those suffering mental health crises, the evidence is far more equivocal on whether there

was an obvious potential for the violation of constitutional rights and an obvious need for more or different training.

While certainly important training topics—engaging with mentally ill individuals, handling barricaded subjects, and performing de-escalation techniques—the failure to train officers in those areas does not "carry a high probability for constitutional violations in the manner intended by the 'so obvious' notice that would open the door to [supervisor] liability." *Id.* Moreover, we cannot say that Sheriff Mack knew to a moral certainty that constitutional violations would result from declining to further train his deputies on engaging with individuals experiencing mental health crises. Thus, Sheriff Mack's failure to train sheriff deputies in these areas falls outside the limited circumstances that the Supreme Court has hypothesized could give rise to single-incident liability for failure to train. Ultimately, we conclude that Sheriff Mack is entitled to summary judgment because Chisesi failed to demonstrate that Sheriff Mack had actual or constructive notice that the particular omissions in the training program were likely to result in constitutional violations.

## VI. CONCLUSION

For the reasons stated above, we **DISMISS** Officer Hunady's appeal for lack of jurisdiction. We **REVERSE** the district court's denial of summary judgment as to Sheriff Mack.

**DISMISSED IN PART, REVERSED IN PART, AND REMANDED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 16, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 21-11700-GG
Case Style: Donna Chisesi v. Matthew Hunady, et al
District Court Docket No: 1:19-cv-00221-C

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in the clerk's office within the time specified in the rules. **A petition for rehearing must include a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** See 11th Cir. R. 35-5(k) and 40-1.

Costs
Each party to bear its own costs.

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion