IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DONNA CHISESI as independent Administratrix of the Estate of Jonathan Victor, Deceased,** )<br>)<br>)<br>) | |
|     **Plaintiff,** ) | |
| ) | **Case No.: 1:19-cv-00221-C** |
| **v.** ) | |
| ) | |
| **MATTHEW HUNADY, in his individual capacity,** )<br>)<br>) | |
|     **Defendant.** ) | |

### DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

COMES NOW, Defendant Matthew Hunady, pursuant to Federal Rule of Civil Procedure 50, and respectfully moves this Court for judgment as a matter of law because Plaintiff Donna Chisesi, having been fully heard at the trial of this matter, failed to present a sufficient evidentiary basis for a reasonable jury to find in her favor. Deputy Hunady respectfully shows this Court the following:

### FACTS[1]

On May 12, 2017, Jonathan Victor was traveling on Interstate 10 in Baldwin County, Alabama, when his car left the road and became stuck in a ditch. (Doc. 87, Page ID# 1096.) A passerby who stopped to help observed that Victor was bleeding and advised him to wrap his arm but left after Victor told him to get away. (Doc. 87, Page ID# 1096.) The Volunteer

---

[1] These facts are derived from the stipulated facts contained in the Parties' Joint Pretrial Document, (Doc. 87, Page ID#s 1095–1100), and evidence presented at trial during Plaintiff's case-in-chief.

Fire Department from Rosinton, Alabama, and Medstar Emergency Medical Services were called to the scene, whereupon paramedic Jason Felks approached Victor's car. (Doc. 87, Page ID# 1096.) Victor placed his hand under his shirt and told Felks "to get the fuck away." (Doc. 87, Page ID# 1096.) Felks moved behind the firetruck for cover, (Doc. 87, Page ID# 1096), and testified at trial that he believed Victor had a gun.

The Baldwin County Sheriff's Office was notified that Victor might be armed, and officers began arriving at the scene, including Defendant Deputy Matthew Hunady, (Doc. 87, Page ID# 1096), and non-party Deputy Zachary Dinkins, who testified at trial that he, like Felks, believed Victor had a gun. The Sheriff's Office originally responded to the scene for a welfare check but this was later changed to "secure the scene." (Doc. 87, Page ID# 1096.) Upon arrival, Hunady retrieved his rifle and stated to those on the scene, "Folks, if he's possibly got a gun, y'all need to stay behind a freaking truck." (Doc. 87, Page ID# 1096.) Hunady took position at the front of the firetruck so he could have cover but still observe Victor's car. (Doc. 87, Page ID#s 1096; 1100.) After Hunady got into position, he spoke with fire department personnel, who briefly described Victor's conduct, and then called out to Victor to get out of the car to receive help. (Doc. 87, Page ID# 1096.) At trial, eyewitness Deputy Benjamin Burke testified that the sole motivation for getting Victor out of the car was to assist with his injuries. Victor was observed moving around in the car, and, while the tinted windows made it difficult to see inside, it was apparent that he was reaching towards the back seat. (Doc. 87, Page ID# 1097.)

Approximately eleven minutes after Hunady's arrival, Victor exited his vehicle with his arms extended outward and his hands wrapped in such a way that Hunady could not

see or identify what he had in his hands. (Doc. 87, Page ID# 1097; 1100.) Hunady, who, along with eyewitnesses Dinkins and Felks, thought Victor might be armed, (Doc. 87, PageID# 1096), told him many times to show or drop what was in his hands and not to advance. (Doc. 87, Page ID# 1097.) Despite Hunady's commands, Victor began moving towards the road – which both Dinkins and Felks testified they also observed – whereupon Hunady fired his rifle, striking Victor in the abdomen and leg. (Doc. 87, Page ID# 1097.) EMS and Baldwin County personnel rendered aid to Victor before he was airlifted to a hospital in Mobile, where he subsequently died. (Doc. 87, Page ID# 1097; 1100.)

The Eleventh Circuit in the case *sub judice* said that the central factual dispute is whether "Victor displayed aggressive, shooter's-type behavior after exiting the vehicle and advancing toward the officers." *Chisesi v. Hunady*, No. 21-11700, 2024 WL 1638587 at *2,*4 (11th Cir. Apr. 16, 2024). At trial, both Dinkins and Felks testified that they had their eyes on Victor within a second or two of the shooting and that, as he moved towards the road, he was in a "shooter's stance," but Plaintiff produced no evidence to the contrary. Indeed, Dinkins testified that, based on his observations, he thought he was in danger of being shot by Victor.

## ARGUMENT

In a jury trial, the defendant may move for judgment as a matter of law after the plaintiff has been fully heard but before the case is submitted to the jury. Fed. R. Civ. P. 50(a). Judgment as a matter of law is appropriate when a court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for [the non-moving] party on [an] issue." Fed. R. Civ. P. 50(a)(1). *See also Chaney v. City of Orlando*, 483 F.3d 1221,

3

1227 (11th Cir. 2007) ("[A] district court's proper analysis is squarely and narrowly focused on the sufficiency of evidence."). Such a motion need only "specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). Plaintiff Chisesi has "been fully heard … during a jury trial," Fed. R. Civ. P. 50(a)(1), on her excessive force claim, (Docs. 1, ¶¶ 44–62; 87, Page ID# 1094), and Defendant Hunady is entitled to judgment as a matter of law for two reasons: (1) a reasonable jury could not find that he violated the Fourth Amendment and (2) he is entitled to qualified immunity.

First, Hunady is entitled to judgment as a matter of law because a reasonable jury could not find that Plaintiff has met her Fourth Amendment burden. Plaintiff was required to prove that Hunady's force was not objectively reasonable in light of the facts and circumstances confronting him. *Graham v. Connor*, 490 U.S. 386, 397 (1989). In this analysis, the Court may consider, *inter alia*, whether the suspect posed an immediate threat to the safety of the officers or others and the need for force. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1324 (11th Cir. 2017). Even deadly force is objectively reasonable "to dispel a threat of serious physical harm to either the officer or others." *Singletary v. Vargas*, 804 F.3d 1174, 1181 (11th Cir. 2015). This analysis may not rely on hindsight and must be from Hunady's perspective in the "tense, uncertain, and rapidly evolving" circumstances. *Graham*, 490 U.S. at 397; *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1333–34 (11th Cir. 2004). This Court should consider the entire scope of Hunady's knowledge about the situation. *Barnes v. Felix*, 605 U.S.----, 145 S.Ct. 1353, 1358 (2025).

This analysis is *not* a referendum on Hunady's tactical decisions: it is immaterial

4

whether such decisions created the need for objectively reasonable force, *Cnty of L.A. v. Mendez*, 581 U.S. 420, 428 (2017), or resulted in an avoidable deadly confrontation. *City and Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 615 (2015). A plaintiff seeking any legal relevance in the officer's tactical decisions is trying to mislead the Court into "the exact kind of 20/20 hindsight analysis [courts] do not engage in." *Baxter v. Santiago-Miranda*, 121 F.4th 873, 891 (11th Cir. 2024). The sole dispositive question is whether Hunady's force was objectively reasonable in the circumstances. *Mendez*, 581 U.S. at 428.

At the trial of this matter, Plaintiff Chisesi has not offered "a legally sufficient evidentiary basis," Fed. R. Civ. P. 50(a)(1), for a reasonable jury to find she has met this demanding burden. First, this Court is compelled to omit any consideration of tactical decisions from its analysis. *Mendez*, 581 U.S. at 428; *Sheehan*, 575 U.S. at 615. It is irrelevant that Hunady ordered Victor to exit the car in order to help him with his injuries or that he did not call a SWAT team or negotiators because this is too far afield from the objective reasonableness of the actual force that he did use. *Mendez*, 581 U.S. at 428. This question is further mooted by the fact that, at trial, Deputy Burke testified that it was his job – not Hunady's – to make the decision about calling in a negotiating team, but the circumstances unfolded too rapidly after Victor exited the car to do so.  At the trial of this matter, Plaintiff frequently alluded to the fact that Hunady did not speak to more first-responders on the scene or the decision to coax Victor out of the car. However, (1) such tactical hindsight is prohibited under the Fourth Amendment and (2) at trial Deputy Burke testified that each situation with a barricaded subject is unique and officers must have the discretion to make decisions appropriate in the circumstances. Any decision on Hunady's

5

Fourth Amendment liability that considers "tactics that result in a deadly confrontation that could have been avoided," *Sheehan*, 575 U.S. at 615, is flawed as a matter of law because it asks for "the exact kind of 20/20 hindsight analysis [courts] do not engage in." *Baxter*, 121 F.4th at 891.

Thus, the only question is whether Plaintiff has provided evidence from which a reasonable jury could find that Hunady's use of force was not objectively reasonable in light of the totality of the circumstances confronting him. *Mendez*, 581 U.S. at 428; *Graham*, 490 U.S. at 397. When this Court sees the relevant events without hindsight and from Hunady's perspective, *Crosby*, 394 F.3d at 1333–34, and considers all of his knowledge about the situation, *Barnes*, 145 S.Ct. at 1358, it is clear that Plaintiff has not met this burden. Any reasonable officer in Hunady's position and with his knowledge would have perceived Victor as a significant threat, *Stephens*, 852 F.3d at 1324, requiring force "to dispel a threat of serious physical harm to either [himself] or others." *Singletary*, 804 F.3d at 1181. From the moment Victor's car left the Interstate, all of his actions made him objectively perceptible to any reasonable person – certainly including Hunady, as well as Felks and Dinkins – as a serious and escalating threat. He ran off the passerby who stopped to help him and told medic Felks to "get the fuck away" with his hand placed under his shirt, leading Felks to think he had a gun. After Felks's encounter, Baldwin County Dispatch was informed that this hostile, profane, and injured man who had run off the Interstate was also possibly armed, leading Hunady and objective eyewitness Dinkins to think Victor had a gun. As Hunady was responding, the situation was changed from a welfare check to "secure the scene," hence Hunady's first thought on arrival being the

6

danger to the bystanders "if he's possibly got a gun."

The objective threat of danger persisted: Victor – profane, hostile, and reported to possibly be armed – was seen reaching towards the backseat of his car while not responding to Hunady's orders to step out for help. Hunady knew all of this when Victor compounded his earlier actions by exiting the car with his hands extended outwards, wrapped in a way that obscured what he was holding, and failed to heed Hunady's orders not to advance. After Victor began advancing towards the road, and without showing or dropping what was in his hands, it was *only* then that Hunady used his rifle. Eyewitnesses Dinkins and Felks testified at trial that, within seconds before the shooting, they observed Victor in a shooter's stance as he moved towards the road, whereas, Plaintiff produced no evidence at trial to support her claim that Victor was non-threateningly standing still when he was shot. This is a fatal lack of support for her position on what the Eleventh Circuit noted is the central factual question. *Chisesi*, 2024 WL 1638587 at *2,*4.

From these facts, "a reasonable jury would not have a legally sufficient evidentiary basis to find" that Hunady violated the Fourth Amendment, Fed. R. Civ. P. 50(a)(1), because his actions were "objectively reasonable in light of the facts and circumstances." *Graham*, 490 U.S. at 396. All of Victor's actions in the middle of this "tense, uncertain, and rapidly evolving" situation, *Id.* at 397, compounded by all previously-reported information, would have led any objectively reasonable officer in Hunady's position to perceive Victor as an immediate threat to his own safety or others, *Stephens*, 852 F.3d at 1324, that required force to prevent "serious physical harm." *Singletary*, 804 F.3d at 1181. Indeed, at trial, Deputy Dinkins testified that he specifically felt he was in danger of being

shot as Victor moved towards the road in a shooter's stance. Based on these facts, no reasonable jury could find Plaintiff has met her burden for her Fourth Amendment excessive force claim and Hunady is entitled to judgment as a matter of law.

The second reason Hunady is entitled to judgment as a matter of law is that he is entitled to qualified immunity. To receive such immunity, a public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). In this case, Hunady was clearly within the scope of his discretionary authority as a deputy sheriff responding to the unfolding situation on the side of Interstate 10. *See* ALA. CODE § 36-22-3(a)(4) (1975). Once an official makes this showing, the burden shifts to the plaintiff to overcome his qualified immunity. *Lee*, 284 F.3d at 1194. To do so, the plaintiff must demonstrate that the official (1) violated a constitutional right (2) that was clearly established at the time. *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018). "[I]f a plaintiff fails either prong of the qualified immunity analysis, [the] claim is barred." *Edger v. McCabe*, 84 F.4th 1230, 1235 (11th Cir. 2023).

Plaintiff cannot succeed on the first prong – a constitutional violation – for all of the reasons set forth *supra*, nor can she succeed on the second. For qualified immunity, law is clearly established if, at the time of the officer's conduct, it was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. *Wesby*, 583 U.S. at 62–63. In other words, existing law must have placed the unconstitutionality of the officer's conduct "beyond debate." *Id*. In this case, Plaintiff has not demonstrated that it would have been beyond debate to Hunady that his actions were unconstitutional: as stressed *supra*,

8

controlling law clearly permits police to use objectively reasonable force when confronted with a person whom any objective officer would perceive as a threat to his own safety or that of others. Moreover, although Hunady's law enforcement tactics can have no role in the Fourth Amendment analysis, *Mendez*, 581 U.S. at 428; *Sheehan*, 575 U.S. at 615, at the trial of this matter, Plaintiff frequently alluded to the fact that Hunady did not speak to more first-responders on the scene and his subsequent decision to order Victor out of the car. However, Plaintiff has not identified – and cannot identify – any law that, in May 2017, placed it "beyond debate" that Hunady acted unconstitutionally by using force after (1) not spending approximately eleven minutes individually interviewing every single person on the scene after learning about the situation from dispatch, which would require taking his eyes off the car with the potentially armed man barricaded inside or (2) deciding to coax Victor out of the car to help him. Indeed, Deputy Burke testified that there was nothing to stop Hunady from ordering Victor out of the car to render aid to him because each barricaded subject is different and officers must have the discretion to make decisions that are appropriate in the circumstances. Thus, Hunady's actions did not violate a clearly established right and he is entitled to qualified immunity.

For all of the aforementioned reasons, Defendant Deputy Matthew Hunady respectfully moves this Court for judgment as a matter of law.

Respectfully submitted this the 9th day of September, 2025.

/s/J. Randall McNeill
J. RANDALL MCNEILL (ASB-4841-E29J)
JOSHUA A. WILLIS (ASB-M10T)
FRED L. CLEMENTS, JR. (ASB-5682-R39C)

          Attorneys for Defendant Matthew Hunady
          WEBB MCNEILL FRAWLEY PC
          One Commerce Street, Suite 700 (36104)
          Post Office Box 238
          Montgomery, Alabama 36101-0238
          (334) 262-1850 – T
          (334) 262-1889 – F
          rmcneill@wmwfirm.com
          jwillis@wmwfirm.com
          fclements@wmwfirm.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this the 9th day of September 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following, as well as filing a copy in open court:

Jack Samuel Tenenbaum
Northwestern Pritzker University School of Law
375 E. Chicago Ave.
Chicago, IL 60611
s-tenenbaum@law.northwestern.edu

Henry Brewster
Henry Brewster, LLC
205 N. Conception Street
Mobile, AL 36603
hbrewster@brewsterlaw.net

          **/s/J. Randall McNeill**
          OF COUNSEL