IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DONNA CHISESI, AS INDEPENDENT ADMINISTRATRIX OF THE ESTATE OF JONATHAN VICTOR, DECEASED,** ) ) ) ) | |
| Plaintiff ) | CASE NO.: 1:19-cv-00221-C |
| ) | |
| v. ) | |
| ) | |
| **MATTHEW HUNADY,** ) ) | |
| Defendant. ) | |

**PLAINTIFF'S OPPOSITION TO SPECIAL INTERROGATORIES TO BE POSED TO THE JURY FOR THE PURPOSES OF QUALIFIED IMMUNITY, OR IN THE ALTERNATIVE, PLAINTIFF'S SUBMISSION OF ADDITIONAL POTENTIAL SPECIAL INTERROGATORIES TO BE POSED TO THE JURY AFTER THE JURY RENDERS ITS VERDICT**

COMES NOW the Plaintiff, by and through undersigned counsel of record, and opposes the Special Interrogatories to be posed to the jury for the purposes of qualified immunity, or in the alternative, additional potential Special Interragatories to be posed to the jury, either prior to the jury rendering its verdict, or even afterwards. The questions posed by the Court and by the Defendant are confusing and may lead the jury to find for the Defendant or nullify its verdict for the Plaintiff based upon the inferences from the Special Interrogatories questions.

The Court apparently relies upon the holding in *Simmons v. Bradshaw*, 879 F.3d 1157, 1164 (11th Cir. 2018) which allowed the use of Special Interrogatories in aid of the resolution of post-verdict decisions on qualified immunity. That Court also cautioned that "it is not the province of the jury to decide a defendant's entitlement to qualified immunity [cites omitted]," because qualified immunity is "a legal issue to be decided by

1

the court,…" *Id.* at 1167-8. In fact, the *Simmons* Court actually rejected an instruction given by the trial court because the language of the given charge "effectively delegated resolution of the issue of qualified immunity to the jury-…" *Id.* at 1166.

The *Simmons* Appellate Court rejected the trial court's charge but provided little guidance as to what questions a jury could answer that would help resolve the trial court's post-verdict determination of qualified immunity. The questions posed by the Court in its proposed Verdict and Special Interrogatory Form illustrate the difficulty in compiling all the factual inquiries and specific resolution the jury may consider.

The Court's proposed six questions are both under broad and over broad in nature if premising Hunady's actions as an objectively reasonable law officer on the perceptions of the "emergency responders" or any other third parties. Why them and not only law enforcement officers? Or what about each individual "emergency responders?" Or what about only emergency responders who witnessed the whole event, or who had a vantage point to allow his observation. Or perhaps only the responders who witnessed only the last 10 seconds prior to the shooting.

The same granular inquiry could be made of all the people posed in each of the six questions. Even if none of the people on the scene perceived Jonathan as threatening, could not the jury still find from the videos that Jonathan did not approach menacingly? The Court's Order denying summary judgment found that the video evidence [was] subject to multiple interpretations as to Victor's actions,…" [PageID.789]. If that is true, then the evidence alone could sway should go to the jury for the ultimate decision.

But if the Court attempts to conceive of all the possible bits of evidence that a jury might consider in reaching a verdict for the Plaintiff, the questions will be infinite. Worse still, it would be impossible for the Court to compile all the possible issues the jury may have answered in coming to its verdict for the Plaintiff.

This is fundamentally why appellate courts are loath to reverse jury verdicts based upon the adequacy of the evidence. As the Eleventh Circuit has stated: "To summarize, we must consider **all the evidence** in the light most favorable to [non-movant] and determine 'whether or not reasonable jurors could have concluded as this jury did based

2

on the evidence presented." *Quick v. Peoples Bank*, 993 F.2d 793, 797 (11th Cir.1993) (citation and internal quotation marks omitted).[emphasis supplied.]

Following is just a small sample of the questions that could be posed to the jury to support their individual rationale for decisions. The number headings correspond to the six Special Interrogatories in the Courts proposed form:

1. As to each "emergency responder":

    a. Were they in a position to see Jonathan Victor?

    b. Had they spoken with anyone previously that advised you that he had a weapon?

    c. Had they spoken to anyone previously who advised you that he had a gun?

    d. Had they seen anything up until the point Jonathan Victor came from the car where he had a weapon?

    e. Did they see any conduct by Jonathan Victor that reflected on his mental capacity?

    f. Did they see any information that reflected on Jonathan's physical condition?

    g. Did their observation of the officers at the scene, including their demeanor and their use of their own weapons affect their belief or perception of whether Jonathan Victor's posed a danger?

2. As to whether defendant Hunady was informed that Jonathan Victor was possibly armed with a weapon, each juror would be asked the following questions:

    a. What were the sources from which officer Hunady was informed and what time was he informed of whether Jonathan Victor was possibly armed with a weapon

    b. Did the sources inform Hunady that the "weapon" was a gun?

    c. Did the sources speak directly to Hunady or did Hunady receive these from another source?

3. As to the question whether Jonathan Victor's conduct upon exiting the vehicle was indicative of wielding a gun, each juror would answer the following questions.

    a. If Jonathan appeared to be holding something,, would Hunady have reasonably perceived it as a gun?

    b. If Jonathan appeared to be wielding a gun, would Hunady have reasonably perceived it to cause him to believe he was threatened.?

    c. If Jonathan appeared to be wielding a gun, and Hunady reasonably felt threatened could he still reasonably have chosen a less lethal response?

    d. Was Jonathan's conduct upon exiting the vehicle such that Hunady felt he was motivated by mental illness.

    e. Did Hunday believe that Jonathan Victor was motivated by an injury that stunned him?

    f. Did Hunady believe that the other information known to Hunady would have affected whether he believed Jonathan Victor was actually wielding a gun.

    g. Did Hunady have other led lethal weapons, including a taser, that would have been as effective?

    h. Were the other officers available to use deadly force and allow Hunady to use a taser, or less lethal weapon?

4. As to whether (each) bystander perceived Jonathan's conduct as

threatening, see the questions posed in #1.

5. To the question did Jonathan and Victor comply with defendant Hunady's commands after Victor exited the vehicle please answer the following questions.

    a. Do you believe that Victor heard the questions being asked?

    b. Do you believe that Victor understood the questions being asked and/or whether his physical condition or medical capacity were affected such that he could not understand?

    c. Do you believe that, Hunady's understood that Victor's condition would've affected his ability to understand Hunady's commands.

In none of the six Special Interrogatories do any questions explore the totality of circumstances that were discussed in *Barnes v Felix*, __ U.S. __ (2025.) This inquiry would also add an unlimited number of questions raised by the testimony and evidence. For example, the jury could be asked:

1. In looking at all the events that occurred prior to Jonathan coming out of the car do you believe:

2. That Hunady was in charge of the situation.

3. Do you believe that Hunady could direct his officers in formulating a plan?

4. Do you believe that Hunady made efforts to formulate a plan other than to command Jonathan out of the car and potentially shoot him?

5. Do you believe that Hunady had a made an effort to gather information among the bystanders or first responders.

6. Do you believe that Hunady took the sufficient time to gather information

Case 1:19-cv-00221-C   Doc# 109   Filed 09/11/25   Page 6 of 7   PageID# 1389

to formulate a good plan?

7. Do you believe that Hunady could've used a bullhorn or other magnifying device to more clearly speak with Jonathan.

8. Do you believe that Hunady could have made an effort to call a negotiating team or other specialized help to communicate with Jonathan?

9. Do you believe that Hunady use the correct demeanor, including a calm and reassuring voice in speaking with Jonathan.

10. Do you believe that, Hunady should have waited longer to get more information from Jonathan's family and or other people that knew him

11. Do you believe that Hunady should have attempted to get Jonathan's family on the phone and communicate directly with Jonathan.

12. Could Hunady have made the decision to have another officer call for negotiators?

13. Could Hunady ask another officer to call the SWAT team, which has special equipment, (beanbag grounds, shield, OC round to penetrate the window.)

14. Could Hunady, rather than commanding Jonathan to exit the car, have advised the officers wanted to help and were not there to harm or arrest him.

15. Did Hunady ever make it clear to Jonathn that Jonathan had not committed a crime?

16. Could Hunady have waited to command Jonathan exit the car until contacting the family to get Jonathan's cell phone number to call him in the car.

WHEREFORE, Plaintiff renews his submission of the Eleventh Circuit's Schedule A Verdict Form without any addition special interrogatories or questions. The jury's verdict will answer all the necessary questions posed by the Court Jury Instructions, and any further inquires will be either so over inclusive or under inclusive as to confuse the jury and fail to fully capture the multiple micro decisions of each juror.

6

Respectfully submitted this the 11th day of September, 2025.

/s/ Henry Brewster

J. Samuel Tenenbaum
Clinical Professor of Law
Director Complex Civil Litigation and Investor Protection Center
Bluhm Legal Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Rubloff 863
Chicago, Il. 60611-3069
312.503.4808(w)
312.503.8977(f)
s-tenenbaum@law.northwestern.edu

Henry Brewster (BREWH7737)
Henry Brewster, LLC
205 N. Conception Street
Mobile, AL 36603
Telephone: 251-338-0630
hbrewster@brewsterlaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2025, a true and correct copy of the foregoing was filed with CM/ECF which will send notice to all parties:

/s/ Henry Brewster