IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DONNA CHISESI, AS INDEPENDENT ADMINISTRATRIX OF THE ESTATE OF JONATHAN VICTOR, DECEASED, | ) ) ) ) | |
| Plaintiff | ) | CASE NO.: 1:19-cv-00221-C |
| v. | ) ) ) | |
| MATTHEW HUNADY, | ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR NEW TRIAL AND BRIEF IN SUPPORT**

COMES NOW the Plaintiff, Donna Chisesi, as independent administratrix of the estate of Jonathan Victor, deceased, by and through her attorneys of record and hereby moves, pursuant to Rule 59 of the Federal Rules of Civil Procedure, to vacate the judgment and enter an Order granting a new trial. In support of this motion and brief, Plaintiff states as follows.

**INTRODUCTION**

On May 12, 2017, Jonathan Victor was traveling on Interstate 10, near mile marker 60, in Baldwin County, Alabama, when he became involved in an apparent one-vehicle crash, causing his vehicle to land in a ditch. As witnesses observed Mr. Victor acting in a potentially disoriented manner, police were called to the scene. Upon Mr. Victor's exit from his vehicle, Officer Matthew Hunady, a Baldwin County Sheriff's Deputy, shot Mr. Victor multiple times, resulting in Mr. Victor's death on May 13, 2017. Mr. Victor was unarmed and had no weapon. Following the

1

incident, Donna Chisesi, as independent administratrix of the estate of Mr. Victor, filed suit against Matthew Hunady asserting claims against Mr. Hunady under 42 U.S.C. § 1983 for wrongful death and excessive force. This matter was tried before a jury and judgment for Matthew Hunady was entered by this Court on the jury's verdict on September 12, 2025. The Court committed two errors, each one of which necessarily tainted the jury's verdict in this case and deprived Mrs. Chisesi of a fair trial.

*First*, the Court erroneously admitted the audio from Defendant's witness Graciela Zaragoza's cell phone video and deposition testimony (where she spoke about her personal perceptions) as evidence. Defendant's subjective perceptions of the incident were not a relevant consideration, as the Court instructed the jury that "Defendant Hunady's personal intent, motivation, or subjective feelings are irrelevant and should have no role in your objective analysis." Mrs. Zaragoza's cell phone audio and deposition testimony served solely to lend credence to Officer Hunady's subjective impressions, prejudicially aggrandizing Officer Hunady's testimony as it pertained to his subjective perception. The admission of the cell phone audio unfairly influenced the jury by baselessly emphasizing a witness's irrelevant subjective impressions. The general verdict turned on Officer Hunady's objective actions, not on the perceptions of either bystanders or Office Hunady himself. Admitting the cell phone audio and deposition testimony into evidence substantially prejudiced Plaintiff by encouraging the jury to consider Defendant's subjective intent, coloring the jury's determination of whether Defendant's use of force was objectively reasonable under the Fourth Amendment.

*Second*, the Court erroneously and prejudicially attached special interrogatories about a qualified immunity defense to the jury verdict form. The general verdict turned on a question of liability in which Officer Hunady's subjective intent was not a factor, as the Court instructed the

jury that "Defendant Hunady's personal intent, motivation, or subjective feelings are irrelevant and should have no role in your objective analysis." The eight special interrogatories dealt entirely with Officer Hunady's subjective perceptions of the incident. By attaching the special interrogatories to the jury verdict form, rather than sealing them until and unless the jury found for Plaintiff, the Court erroneously prejudiced the jury's determination. The eighth special interrogatory, which dealt explicitly with Officer Hunady's subjective perception, was also erroneously given as a matter of law, as special interrogatories concerning mixed questions of law and fact may only be given to a jury if the jury is fully instructed on all applicable legal standards. This error denied Plaintiff a fair trial by providing the jury with an improper, confusing, and misleading framework, resulting in substantial prejudice against Plaintiff.

Each issue is addressed in detail below. Any one of the errors, standing alone or taken together, entitles Mrs. Chisesi to a new trial.

## STANDARD OF REVIEW

After a jury verdict, a district court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59. One such reason is that "the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). In this Circuit, an erroneous evidentiary ruling justifies a new trial when "the error 'probably had a substantial influence on the jury's verdict.'" *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1352 (11th Cir. 2007), quoting *United States v. Stephens*, 365 F.3d 967, 977 (11th Cir. 2004). "Substantial influence" is also referred to as "substantial prejudice" and entails a violation of a party's "substantial rights." *Peat, Inc. v. Vanguard Rsch., Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004). A substantial influence is

3

apparent "if one cannot say…that the judgment was not substantially swayed by the error." K*otteakos v. United States*, 328 U.S. 750, 765 (1946). To make this determination, courts inquire into "how much of an effect did the improperly admitted or excluded evidence have on the verdict?" *Peat*, 378 F.3d at 1162. In making this determination, courts consider "the number of errors, the closeness of the factual disputes…and the prejudicial effect of the evidence at issue," as well as "whether counsel intentionally elicited the evidence, whether counsel focused on the evidence during the trial, and whether any cautionary or limiting instructions were given." *Id*. This Circuit has recognized that "the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial might be necessary." *United States v. Preciado-Cordobas*, 981 F.2d 1206, 1215 (11th Cir. 1993).

## ARGUMENT

### I. Admitting the Audio in Witness Graciela Zaragoza's Cell Phone Video and Deposition Testimony Caused Substantial Prejudice.

Erroneous evidentiary rulings necessitate "a new trial where there is substantial prejudice." *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002). The existence of "substantial prejudice" entails a violation of a party's "substantial rights." *Peat*, 378 F.3d at 1162. Evidentiary materials with "the potential to confuse the jury and distract it from the central issues" warrant exclusion. *United States v. Sarras*, 575 F.3d 1191, 1214 (11th Cir. 2009). An erroneous evidentiary ruling is violative of substantial rights if it "had a substantial impact on the jury's verdict." *Proctor*, 494 F.3d at 1352. Courts define hearsay as "a statement, other than one made by a declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015). This Circuit follows a three-part test for assessing the admissibility of hearsay: "(1) whether that statement is offered for a non-

hearsay purpose, (2) whether that non-hearsay purpose is relevant, and (3) whether the probative value of the evidence is substantially outweighed by any unfair prejudice that would arise from admitting it." *United States v. Kent*, 93 F.4th 1213, 1218 (11th Cir. 2024). Hearsay is generally inadmissible as evidence if it does not satisfy these factors. *United States v. Baker*, 432 F.3d 1189, 1203 (11th Cir. 2005). Evidence is only admissible if it impacts the resolution of a fact "of consequence in determining the action." Fed. R. Evid. 401–402. Evidence may also be inadmissible if "its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. The erroneous admission of evidence with no probative value, or with a probative value unable "to survive Rule 403's balancing test", may affect a party's substantial rights, necessitating a new trial. *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F.3d 1460, 1464–65 (11th Cir. 1994).

    a. <u>The Audio and Deposition Testimony Consisted of Out-of-Court Assertions and was Inadmissible under the Eleventh Circuit's Three-Part Hearsay Framework.</u>

Defendant obtained the audio from a bystander's (Graciela Zaragoza) cell phone video, thus presenting before the jury out-of-court statements and a continuous, subjective auditory narration of the event. Under *Rivera*, statements offered for their truth are hearsay; under *Kent*, even if a non-hearsay purpose is claimed, the proponent must demonstrate (1) a genuine non-hearsay use, (2) relevance to that use, and (3) that Rule 403 does not require exclusion. *Rivera*, 780 F.3d at 1092; *Kent*, 93 F.4th at 1218. Therefore, the only plausible functions of the audio were to (i) provide the jury with bystander descriptions or reactions to the unfolding scene or (ii) support Mrs. Zaragoza's account by allowing jurors to hear the episode "through" her device. Neither purpose is permissible. The audio relayed statements about what was happening and what participants allegedly did (e.g., "Mr. Victor was holding a gun"). This is classic hearsay under

5

*Rivera* and *Baker*. Despite Defendant's claim of a non-hearsay purpose, that purpose is irrelevant to the Fourth Amendment's objective reasonableness inquiry—which focuses on the officer's conduct, not a bystander's subjective impressions. *Kent* thus prevents admission: the claimed non-hearsay purpose is irrelevant to a legally dispositive question, and in any case, Rule 403 excludes the evidence.

For the same reasons, Plaintiff objected to Mrs. Zaragoza's deposition testimony regarding her personal perceptions of what she believed she saw or heard. These perception statements are also hearsay or, at the very least, irrelevant to the objective reasonableness analysis and were admitted only because the Court denied the motions in limine and overruled Plaintiff's objections to the deposition designations.

Furthermore, the audio served as a channel for multiple levels of unsworn, out-of-court statements—exclamations, commands, and characterizations—none of which were protected by oath, cross-examination, or any reliability checks.

Nor can the Defense claim the audio as "effect on the listener." There is no basis to show that Officer Hunady actually heard, understood, or relied on the remarks captured by a bystander's device—while many feet away from the scene and in their car—and the Court's objective reasonableness standard makes an officer's subjective state of mind irrelevant to liability in any case. Therefore, any non-hearsay approach is both legally and evidentially barred under the jury instructions.

> b. <u>Even Assuming a Non-Hearsay Rationale, Rule 403 Compelled Exclusion Because the Audio and Deposition Testimony's Limited Probative Value was Substantially Outweighed by Unfair Prejudice and Juror Confusion.</u>

The audio added nothing probative about whether Officer Hunady's use of force was objectively reasonable; the video's image and sworn testimony through video deposition of Mrs. Zaragoza already supplied the relevant facts. What the audio did add—tone, volume, exclamations, background comments, and the visceral immediacy of a crowd's reactions—invited the jury to be guided by subjective responses rather than the governing legal standard. As *Sarras* recognizes, evidence with a "potential to confuse the jury and distract it from the central issues" should be excluded. *Sarras*, 575 F.3d at 1214. Here, the central issue was the officer's conduct under the Fourth Amendment, not the crowd's emotional soundtrack or a bystander's contemporaneous impressions.

The aural layer also conveys an aura of reliability (jurors "heard it themselves"), yet it cannot be cross-examined: tone and inflection are impossible to test for accuracy, context, or bias. This is exactly the type of unfair prejudice and "misleading the jury" risk that Rule 403 aims to prevent. The Eleventh Circuit's prejudice analysis in *Peat* confirms the risk where, as in this case, the evidence pertains to a heatedly contested ultimate issue and is likely to have an outsized influence. Moreover, less prejudicial alternatives were not fully explored: the Court could have admitted the silent video (which depicts the same events) while excluding the audio track, thus preserving whatever minimal probative value it had without the emotional impact of the audio. Because the same factual point could be established through less inflammatory means (such as sworn testimony, still images, or muted footage), Rule 403's balancing clearly favors exclusion.

This imbalance was worsened by the Court's denial of Plaintiff's motions in limine "A" and "C" and by the rejection of Plaintiff's objections to Defendant's deposition designations, which together allowed the jury to hear Mrs. Zaragoza's personal-perception narrative in the cell

phone audio and her deposition excerpts—precisely the kind of subjective content the instructions told the jury not to consider.

The significance of this evidence to the Defense was highlighted in the closing argument, where counsel explicitly told jurors to focus on what they heard on the recording and encouraged them to consider those perceptions when evaluating objective reasonableness—affirming both the emphasis and prejudicial impact under *Peat*.

Critically, the balance under Rule 403 must be considered in light of the Court's final instructions. When these instructions remove subjective states and intentions from the jury's decision-making process, any alleged probative value in a subjective audio is legally minimized to almost zero, while prejudice and confusion remain high. In other words, the instructions themselves lean the Rule 403 analysis toward exclusion.

> c. <u>The Audio and Deposition Testimony Improperly Bolstered a Key Defense Witness and was Needlessly Cumulative, Compounding the Risk of a Verdict Swayed by Impermissible Considerations.</u>

Mrs. Zaragoza was one of only three Defense witnesses, making her credibility and testimony especially material. Playing the audio from her device improperly amplified her testimony by turning her narrative into a sensory demonstration—an evidentiary shortcut that "backs" a witness's version with an untestable emotional layer. The Eleventh Circuit warns that rulings admitting such material can "substantially influence" a verdict, especially when counsel leverages it in argument. *See Proctor*, 494 F.3d at 1352; *Ad-Vantage*, 37 F.3d at 1465 (error compounded where inadmissible material is emphasized during closing). Nor was the audio necessary to help the jury: the witness testified and was cross-examined via video deposition; the video already showed the events; and the audio only added subjective, cumulative impressions.

Cumulativeness that increases unfair prejudice and juror confusion is properly excluded under Rule 403. The result was to boost the perception of bystander subjectivity and give a false sense of credibility to the witness, which interferes with objective assessment. Essentially, the recording acted as unsworn "corroboration by ambiance."

Because the jury experienced the scene through Mrs. Zaragoza's microphone, the usual safeguards against improper bolstering—impeachment, cross-examination, and limiting questions—were diminished. The technological mediation gave an unwarranted appearance of authenticity that a juror is unlikely to dismiss, especially since Defendant's witness list was short and the witness's account was central. This dynamic turns the audio into a credibility booster rather than a tool for fact-finding, which is exactly what Rule 403 aims to prevent when the additional probative value is minimal and the risk of undue influence is high.

The same issue affected her deposition testimony: to the extent the designations reflected her personal perceptions, they mirrored the cell phone audio's subjective cues and further supported her account for non-evidentiary reasons, despite Plaintiff's objections. Defense counsel's closing then emphasized these perception-based themes—returning to what Mrs. Zaragoza heard and felt—which amplified the bolstering effect and reinforced the jury's reliance on subjective cues over the charge's objective reasonableness test.

Furthermore, the bolstering effect directly conflicts with the general verdict instruction: because the jury was instructed to apply an objective reasonableness standard free from subjective states of mind, any "credibility" enhancement arising from reactions, tones, or emotional cues is not just cumulative— it encourages the very kind of subjectivity the instructions forbade.

    d. <u>The Court's Jury Instructions Foreclosed Subjective Perspectives, Making the Audio and Deposition Testimony Legally Irrelevant and Inherently Prejudicial.</u>

The Court's instructions clearly told jurors that "Defendant Hunady's personal intent, motivation, or subjective feelings are irrelevant and should have no role in your objective analysis." (See jury instructions attached as Exhibit A.) This directive controlled the general verdict and established the decision rule: an *objective* evaluation of the use of force. Once the governing charge excluded subjective intent and perceptions from the decision-making process, an audio whose only possible content was subjective—such as bystander reactions, tones of voice, and perceived threats from the officer's perspective—had no lawful evidentiary purpose. In simple terms, the jury's instructions indicated that intent was irrelevant, so the audio's only purpose would be to bias the jury.

The contradiction between the admitted audio and the governing charge did not just create confusion at the margins; it replaced an external, subjective perspective with the legally required objective one. In that stance, Rule 401 and Rule 402 fail for lack of relevance, and Rule 403 also mandates exclusion because the only remaining impact of the audio is to provoke or mislead. This is not a mere technical inconsistency; it is a direct clash between law and evidence. A general verdict instruction that removes intent and personal perception from the analysis cannot be compatible with evidence whose sole purpose is to provide intent and perception. Allowing the jury to consider both ensures that one will distort the other—almost always to the Plaintiff's disadvantage—since jurors are more likely to be influenced by a vivid recording than by an abstract legal directive.

Accordingly, allowing the jury to hear both the cell phone audio and deposition segments that recounted Mrs. Zaragoza's personal perceptions conflicted with the objective reasonableness instruction and should have been excluded

    e. <u>The Mechanism of Prejudice is Direct and Substantial.</u>

Under *Peat*, the Court considers "how much of an effect" the error likely had. *Peat*, 378 F.3d at 1162. Here, (1) the error touched on the central issue—reasonableness of deadly force—by providing jurors with a powerful non-legal measure (how the audio "felt"); (2) the factual disputes were close enough that an auditory layer could significantly influence credibility and inferences; (3) Defendant had a strong incentive to highlight the audio because it diverted attention from the constitutional standard to bystander perception; and (4) no limiting instruction could have reliably prevented the jury from using the audio for a non-hearsay purpose, especially since the purpose was to convey the sound itself. The audio's admission prompted the jury to decide based on the soundtrack, not the law. The Court cannot determine that the verdict "was not substantially swayed by the error," so a new trial is necessary. *Kotteakos*, 328 U.S. at 765; *Proctor*, 494 F.3d at 1352; *Peat*, 378 F.3d at 1162. Applying *Peat*'s factors strictly, the evidence aligns: the multiple errors (admitting the audio, denying a mute-track option, and allowing arguments that relied on what the jury "heard") compounded their impact; the issue at stake (ultimate liability) increased the chance that the error influenced the verdict; the emphasis factor is significant because jurors naturally focus on sensory evidence they can replay and "experience" during deliberations; and the lack of an effective limiting instruction left the jury to interpret the audio's use on their own. Under these circumstances, the Court cannot reliably separate the verdict from the influence of the audio and should grant a new trial.

In short, the error was not isolated: it involved (1) denying motions in limine "A" and "C," (2) overruling Plaintiff's objections to Defendant's deposition designations, and (3) admitting cell phone audio and deposition testimony recounting Mrs. Zaragoza's personal perceptions. Each ruling allowed subjective perceptions to reach the jury despite the objective reasonableness-only charge, and together, they caused substantial prejudice requiring a new trial.

11

Two features clearly highlight prejudice: first, the inconsistency between the general verdict instruction (which calls for no subjective perspective) and the admitted audio (which contains entirely subjective content) meant the jury faced mutually exclusive decision rules; second, because the audio was accessible during deliberations and could be replayed, its emotional impact likely overshadowed the legal standard. Under *Peat*, these conditions—conflicting decision frameworks and replayable, highly salient evidence—strongly suggest that the error substantially swayed the verdict. The closing argument only intensified those issues: by highlighting what jurors heard on the recording, the Defense made sure that the audio—rather than the objective reasonableness standard—took precedence in deliberations, satisfying *Peat*'s emphasis factor and confirming substantial prejudice.

## II. Permitting the Attachment of Qualified Immunity Interrogatory Questions with the Jury Verdict Form Caused Substantial Prejudice.

Challenges to "the phrasing of special jury interrogatories" justify a new trial when "the interrogatories have 'the potential for confusing or misleading the jury.'" *Cent. Alabama Fair Hous. Ctr., Inc. v. Lowder Realty Co.*, 236 F.3d 629, 635 (11th Cir. 2000), quoting *Petes v. Hayes*, 664 F.2d 523, 525 (5th Cir. 1981). A new trial is appropriate where special interrogatories are "inconsistent with the jury instructions," because inconsistency is "likely to confuse or mislead the jury. *Petes*, 664 F.2d at 524. Mixed questions of law and fact may be submitted as special interrogatories "only if the jury is instructed as to the legal standards which they are to apply." *Jackson v. King*, 223 F.2d 714, 718 (5th Cir. 1955). The imminence of a threat is not a pure question of fact. *See, e.g.*, *The Trefusis*, 98 F. 314, 315 (5th Cir. 1899). In this circuit, it is error to furnish interrogatories "without explaining to the jury the factors which they were to consider in arriving at the ultimate conclusion." *Jackson*, 223 F.2d at 718.

      a. <u>The Special Interrogatories were Inconsistent with and Undermined the General Charge.</u>

The Court's general charge instructed jurors on an objective standard of liability, with jurors told that "Defendant Hunady's personal intent, motivation, or subjective feelings are irrelevant and should have no role in your objective analysis." The special interrogatories, however, incorporated questions about Defendant's personal intent, motivation, and subjective feelings into the verdict form. This mismatch caused the jury to be pulled in two directions, addressing the objective standard of the general instructions while also reading questions about Defendant's subjective perceptions. When the verdict form and the charge use different legal language, the form tends to dominate deliberations—jurors focus on what they need to "check," rather than on the abstract instructions. This leads to exactly the kind of juror confusion *Petes* and *Lowder* highlight: a verdict formed under an improper and misleading framework, rather than based solely on the proper legal instructions on liability.

Although the Court instructed jurors not to answer the immunity interrogatories unless directed, it never told them not to read them. Since the questions remained in the packet during deliberations, simply being exposed to their wording—often referencing what the officer "perceived"—inevitably influenced the jury's objective-only liability analysis. That is the prejudice: the general instructions stated that the verdict should not consider subjective perspective, yet the jurors still read perception-based questions that suggested the opposite—and they read them before reaching a decision on liability. (See signed verdict form attached as Exhibit B.) Those questions should not have been seen at all unless and until the jury first found in favor of the Plaintiff; showing them earlier tainted the merits deliberations with a subjective lens that the charge explicitly prohibited.

Additionally, inconsistency at the point of decision is especially prejudicial. Jurors deliberate with the paper in front of them; the checkboxes become their guiding framework. If these boxes include questions framed around subjective perceptions where the instructions only address objective perceptions, jurors may subconsciously blend the two by applying the framing of the special interrogatories to the substance of the instructions. This integration elevates the subjective perspective over the objective liability elements, effectively rewriting the charge. Therefore, the confusion is embedded in the deliberative process itself and cannot be corrected through generic instructions to follow "all" directions.

Compounding the problem, the Court's general charge instructed jurors to decide the case using an objective standard and explicitly rejected subjective states of mind. However, the qualified immunity special interrogatories repeatedly asked about what the officer *perceived*. Presenting those questions at the start encouraged the jury to consider a subjective perspective in the liability decision, despite the instruction to focus solely on objective reasonableness. This contradiction is not merely academic; it ensured that the verdict would be based on mixed—and incompatible—decision rules.

Furthermore, if the Court wanted to obtain contingent factual findings potentially relevant to a future qualified immunity decision, the proper approach was to withhold or seal any such interrogatories unless and until the jury first determined liability for the Plaintiff. Allowing the jury to see questions framed around qualified immunity before deciding on the merits improperly front-loaded a defense that belongs to the Court and influenced the jury's perception of liability.

    b. <u>The Court Submitted a Mixed Law and Fact Question without Supplying the Governing Legal Standards.</u>

The eighth interrogatory asked: "Do you find that Deputy Hunady perceived that Mr. Victor posed an imminent threat of serious physical harm to himself or others when he used deadly force?" In addition to explicitly querying jurors as to Defendant's subjective perceptions, this interrogatory is a mixed question of law and fact. Jurors cannot determine what constitutes an "imminent threat" under this Circuit's Fourth Amendment jurisprudence without understanding the meaning of imminence as a matter of law. Under *Jackson*, mixed questions of law and fact may be served as special interrogatories "only if the jury is instructed as to the legal standards which they are to apply." *Jackson*, 223 F.2d at 718. In this case, the jury was never instructed on what the law considers an "imminent threat." Without that instruction, jurors had no legal standard to guide their deliberations and were forced to rely on everyday understandings or equate the officer's *perception* of threat with *legal* imminence. This risks the very error *Jackson* prohibits: asking lay jurors to supply the law themselves. It also worsens the earlier problem: replacing a subjective "perception" metric for the constitutional standard. The eighth interrogatory thus caused two issues: (1) it posed an unresolved mixed law and fact question without legal definitions, and (2) it embedded a perception-based formulation that is foreign to the governing rule, thereby likely confusing the jury during deliberations.

The phrasing is also prejudicial. By linking the finding to what the deputy "perceived…when he used deadly force," the question is anchored to the officer's viewpoint at the moment of firing. This framing encourages a post-hoc validation of the shooting based on the actor's mental state, rather than an assessment of the totality of circumstances under the correct objective reasonableness standard. In practical terms, the special interrogatory told jurors that the officer's personal perception could answer the ultimate question, while leaving undefined the legal threshold for "imminence." Without clear definitions, lay usage of "imminent," which may be

subjective, overrides the necessary objectivity of the legal standard and allows a "yes" answer on grounds that are completely inconsistent with the proper constitutional test.

This inconsistency was worsened by the Court's clear instruction that the general verdict should be made without considering subjective perspective. The interrogatories, however, referred to the officer's perception (e.g., "imminent threat"), thus inviting the very subjectivity that the charge prohibited. Additionally, because jurors were allowed to read this "perceived…imminent threat" question even if told not to answer it, its subjective phrasing influenced their liability deliberations from the start—directly conflicting with the instruction that the general verdict should not consider subjective perspective.

As such, while the erroneous use of the special interrogatories prejudiced the jury by coloring its resolution of the general verdict, the content of the special interrogatories was also erroneous as a matter of law and should not have been shown to the jury regardless.

    c. <u>The Prejudice was Substantial.</u>

In determining whether the use of special interrogatories constituted plain error, courts weigh several factors: "(i) whether, when read as a whole and in conjunction with the general charge the interrogatories adequately presented the contested issues to the jury; (ii) whether the submission of the issues to the jury was fair; and (iii) whether the ultimate questions of fact were clearly submitted to the jury." *Dreiling v. Gen. Elec. Co.*, 511 F.2d 768, 774 (5th Cir. 1975) (internal citations omitted). While "prejudice will not result from the use of the interrogatory" if "neither it nor the answers to it were factors" in the decision, it does not follow that an interrogatory that may have factored into a jury's decision is non-prejudicial. *Angelina Cas. Co. v. Bluitt*, 235 F.2d 764, 767 (5th Cir. 1956). Courts assess prejudice by asking "how much of an effect did the improperly admitted or excluded evidence have on the verdict?" and by weighing factors such as

16

the number of errors, the closeness of the factual disputes, counsel's emphasis, and the presence or absence of curative guidance. *Peat*, 378 F.3d at 1162.

Each factor of the *Peat* test supports a new trial here. First, the error pervaded the verdict form—the jurors' roadmap—ensuring maximum impact. Second, the interrogatories addressed the core liability dispute, amplifying their effect regardless of how close the facts were. Third, the Court did not provide a legal definition of "imminent threat" nor offered an instruction to distinguish qualified immunity from the jury's task, leaving the confusion between the verdict form and the special interrogatories unresolved. Lastly, because the jury could see the special interrogatories before reaching its verdict, the taint may have influenced deliberations from the start. The Court cannot say the judgment "was not substantially swayed by the error," and Rule 59 relief is warranted. *Kotteakos*, 328 U.S. at 765; *Proctor*, 494 F.3d at 1352.

Prejudice is especially evident in the clear clash between the objective-only charge and the subjective approach of the interrogatories: when jurors are presented with eight perception-focused questions *before* assessing liability, those prompts inevitably influence their mental model of the case. The sequencing error—failing to withhold or condition the interrogatories—meant the jury deliberated under the influence of qualified immunity from the start, thereby adopting a subjective perspective explicitly prohibited by the instructions. The decisive prejudice here is that jurors read eight perception-oriented questions while deciding liability under an objective reasonableness-only instruction. This exposure inevitably tainted their deliberations by elevating the officer's subjective viewpoint.

Applying *Peat*'s factors literally, they point in one direction. The number and nature of the errors—such as including qualified immunity special interrogatories with the jury verdict form, framing the interrogatories in subjective terms, and omitting governing definitions—collectively

17

had a lasting impact on the trial outcome. The placement of the interrogatories at the point of verdict drew the jurors' attention to them. Additionally, there was no instruction telling jurors to disregard the qualified immunity framing or to limit their answers to objective criteria. In these conditions, the Court cannot confidently separate the verdict from the improper format. Because the interrogatories likely influenced the deliberations and outcome in a way that could have substantially prejudiced Plaintiff, a new trial is warranted.

## CONCLUSION

As demonstrated above, the Court erred in admitting the audio from Mrs. Zaragoza's cell phone video and deposition testimony into evidence and attaching the Qualified Immunity defense interrogatory questions to the jury verdict form. Any one of these errors, whether considered alone or together, caused substantial prejudice, impacted Mrs. Chisesi's substantial rights, and led to substantial injustice. Therefore, Plaintiff Donna Chisesi, as administratrix of the estate of Jonathan Victor, respectfully requests that this Honorable Court grant her motion for a new trial.

Respectfully submitted,

/s/ J. Samuel Tenenbaum

J. Samuel Tenenbaum
*Attorney for Plaintiff*
Clinical Professor of Law
Director Complex Civil Litigation and Investor Protection Center
Bluhm Legal Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Rubloff 863
Chicago, Il. 60611-3069
312.503.4808(w)
312.503.8977(f)

s-tenenbaum@law.northwestern.edu

/s/ Henry Brewster

Henry Brewster, LLC
*Attorney for Plaintiff*
205 N. Conception Street
Mobile, AL 36603
Telephone: 251-338-0630
hbrewster@brewsterlaw.net

## Certificate of Service

      I hereby certify that on the 10th day of October 2025, a copy of the foregoing was electronically filed with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the following counsel of record:

J. Randall McNeill
J. RANDALL MCNEILL (ASB-4841-E29J)
FRED L. CLEMENTS, JR. (ASB-5682-R39C)
*Attorneys for Defendant Sgt. Matthew Hunady*
WEBB MCNEILL WALKER PC
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama 36124
(334) 262-1850 – T
(334) 262-1889 – F
rmcneill@wmwfirm.com
fclements@wmwfirm.com

                                                /s/ J. Samuel Tenenbaum
                                                One of the Attorneys for Plaintiff Donna Chisesi