IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DONNA CHISESI, AS INDEPENDENT )
ADMINISTRATRIX OF THE ESTATE )
OF JONATHAN VICTOR, DECEASED, )
                                                  )
    Plaintiff,                            )
                                                  )
v.                                                )    CIVIL ACTION NO.:
                                                  )    1:19-cv-00221-C
MATTHEW HUNADY,                         )
                                                  )
    Defendant.                          )

**ORDER**

This cause is before the Court on the Motion for New Trial (Doc. 115) filed by Plaintiff

Donna Chisesi ("Ms. Chisesi"), as independent administratrix of the estate of Jonathan Victor

("Mr. Victor"), deceased, the Defendant's Response in Opposition to Plaintiff's Motion for a New

Trial (Doc. 118) filed by Defendant Matthew Hunady ("Deputy Hunady"), and Ms. Chisesi's Reply

(Doc. 120).  Upon consideration of the parties' briefs and the record, the undersigned finds, for the

reasons discussed below, that Ms. Chisesi's Motion for New Trial is due to be **DENIED**.

**I.      Background**

On May 12, 2017, Jonathan Victor was traveling on Interstate 10, near mile marker 59, in

Baldwin County, Alabama, when his vehicle left the eastbound lane of Interstate 10 and became

stuck in a ditch. Witnesses who approached Mr. Victor's car at the scene generally described him

as angry, erratic, and refusing help. Emergency personnel called the Baldwin County Sheriff's

Office to the scene. Several deputies went to the scene, including Deputy Hunady. Mr. Victor

eventually exited his vehicle and was shot by Deputy Hunady, resulting in Mr. Victor's death on

May 13, 2017.

Following the incident, Ms. Chisesi filed suit asserting claims against Deputy Hunady under 42 U.S.C. § 1983 for wrongful death and excessive force. Deputy Hunady moved for summary judgment on qualified immunity grounds. The critical factor in the qualified immunity analysis at the summary judgment stage was the presence or absence of an imminent threat. (Doc. 40, PageID.787). The video evidence presented by Deputy Hunady was determined to be subject to multiple interpretations, and the record at summary judgment could be reasonably viewed as showing Mr. Victor did not pose an immediate threat of serious physical harm to anyone present at the shooting. (*Id*. at PageID.789). Deputy Hunady's motion was denied based on a finding that genuine issues of material fact remained as to whether Deputy Hunady violated a constitutional right of Mr. Victor's. (*See* Doc. 40).  Deputy Hunady appealed the denial of summary judgment to the Eleventh Circuit Court of Appeals.

The Eleventh Circuit Court of Appeals noted in its judgment that there was a factual issue on appeal as to whether Mr. Victor displayed aggressive, shooter's-type behavior after exiting the vehicle and advancing toward the officers. (*See* Doc. 44, PageID.842).  That court summarized Deputy Hunady's argument as follows:

> The district court should be reversed because it "erroneously concluded that a "reasonable jury could disagree with Officer Hunady's contentions that "Victor appeared to pose an imminent threat of serious physical harm," or that it was at least "reasonable for him to believe that Victor was [a] danger [] to him," because "Victor stood in an aggressive shooting stance."

(*Id*. at PageID.843). The Eleventh Circuit determined it lacked jurisdiction over Deputy Hunady's appeal, which presented no legal issues for resolution but only the factual issue of what happened. (*Id*.).  Deputy Hunady argued this case was different because there was video evidence, but the Eleventh Circuit determined that interpretation of the video footage was a factual issue to be resolved by a jury. (Doc. 44, PageID.845).  Thus, Deputy Hunady's appeal was dismissed.

Prior to trial, on August 1, 2025, Deputy Hunady filed his designation of video deposition testimony for trial.[1] (*See* Doc. 77). The Joint Pretrial Document set forth Ms. Chisesi's general objection to Deputy Hunady's video deposition designation for lines 22:24-23:4 of the deposition transcript concerning what Graciela Zaragosa ("Ms. Zaragosa") felt, believed she saw at the scene, or stated based on "irrelevance." (Doc. 87, PageID.1107-1108). The Joint Pretrial Document also included Deputy Hunady's objections to counter-designations of the video deposition based on hearsay, speculation, or relevancy. (*Id.*). After discussion with counsel during the final pretrial conference, Ms. Chisesi was required to produce excerpts from the deposition, giving an objection and a basis for the objection to every line of designations that applied. Deputy Hunady was also required to produce objections and a basis for the objection to each counter-designation by a date certain. Ms. Chisesi filed objections (Doc. 98) with text from the deposition transcript for certain designations, stating an objection such as hearsay, relevance or both. For example, Ms. Chisesi's objection to designation 11:7-12:6 simply stated, "Hearsay & relevance." (Doc. 98, PageID.1230). Ms. Chisesi provided *no basis* as to how each designation constituted hearsay or was irrelevant pursuant to the Federal Rules of Evidence or any other authority despite the undersigned's order. Deputy Hunady filed a response to Ms. Chisesi's objections providing text from the deposition transcript and a thorough response to each hearsay and relevancy objection.

Ms. Chisesi also filed three motions in limine contained within Doc. 99. In her first motion, Ms. Chisesi sought to exclude audio portions of any videos taken by the civilian witnesses based on hearsay and relevance. Ms. Chisesi also argued that the admission of audio portions of civilian witness videos may violate Federal Rule of Evidence 403 by unduly prejudicing Ms. Chisesi. Ms. Chisesi's first motion was denied for the reasons given by counsel for Deputy Hunady in his

---

[1] Deputy Hunady later filed amended designations. (*See* Doc. 84).

response (Doc. 103). Ms. Chisesi's third motion in limine sought to exclude conclusory opinions and speculative assertions by lay witnesses regarding Mr. Victor's actions pursuant to Rules 403 and 702. This motion was denied since granting a general motion to exclude speculative testimony of eyewitnesses would be premature.

On September 9, 2025, prior to the start of the second trial day, Ms. Chisesi's objections to Deputy Hunady's designations of Ms. Zaragosa's video deposition were heard. It was explained to counsel that the denial of Ms. Chisesi's general motion in limine regarding the cell phone video guided the decision as to the specific objections that were made as to her video deposition. All objections by Ms. Chisesi were overruled except for objection numbers 11, 13, 21, and 23[2] based on the determination that the testimony Ms. Chisesi sought to exclude was either not hearsay or fell under an exception to the hearsay rule because of the unusual situation Ms. Zaragosa and her husband faced at the scene. The statements made were not being offered to prove the truthfulness of the statements but instead were offered to show the witnesses' perceptions of what was happening at the time.

Prior to trial, Deputy Hunady moved to allow use of a compilation video during trial as illustrative evidence. The compilation video consisted of video footage from Deputy Hunady's patrol vehicle, Deputy Hunady's bodycam, and Ms. Zaragosa's cell phone. Ms. Chisesi agreed to use the compilation video as an illustrative aid, but only with sound from Deputy Hunady's bodycam. The compilation video was authorized for use at trial but prohibited from being submitted to the jury for use during deliberations. (*See* Doc. 106). At the start of Deputy Hunady's proof, counsel for Deputy Hunady played Ms. Zaragosa's deposition video, which included footage from her cell phone video. Thereafter, Deputy Hunady's counsel moved to admit exhibits

---

[2] Based on statements of counsel objection 23 was determined to be moot.

3, 4, 5, and 6, which were videos referenced in Ms. Zaragosa's video deposition, including her cell phone video (exhibit 3). Ms. Chisesi's counsel objected to this evidence based on prior objections with no new or additional explanation. The undersigned overruled Ms. Chisesi's objection and admitted exhibits 3, 4, 5 and 6.

At the close of Ms. Chisesi's evidence, Deputy Hunady moved for judgment as a matter of law under Fed. R. Civ. P. 50. The motion was denied. At the close of all evidence, Deputy Hunady renewed his motion for judgment as a matter of law. This motion was also denied. Following a charge conference, the jury was instructed as to the merits of Ms. Chisesi's case.  Following Eleventh Circuit precedent, the undersigned did not instruct the jury on the affirmative defense of qualified immunity. Judgment for Deputy Hunady was entered by this Court pursuant to the jury's verdict on September 12, 2025.

## II.   Legal Standard

Pursuant to Rule 59, a district court "may… grant a new trial on all or some of the issues…for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "A losing party may move for a new trial under Rule 59 on the grounds that 'the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair…and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.'" *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (citing *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940)). The Eleventh Circuit has explained the standard for granting a new trial on an evidentiary basis as follows:

> Trial courts should grant new trials on an evidentiary basis "only when the jury verdict is against the great—not merely the greater—weight of the evidence." This difficult standard is "intended to preserve litigants' right to a jury trial and to ensure

5

that judges will not substitute their own judgment for that of the jury with respect to disputed issues of fact." A party is owed a new trial where evidentiary issues affected the party's "substantial rights."

*Henderson v. Ford Motor Co.*, 72 F.4th 1237, 1244 (11th Cir. 2023) (internal citations omitted).

Courts consider several factors when determining whether a party's substantial rights were affected: 1) the number of errors; 2) the closeness of the factual disputes; 3) the prejudicial effect of the evidence; 4) the instructions given; and 4) whether counsel intentionally elicited the evidence and focused on it during the trial. *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F.3d 1460, 1465 (11th Cir. 1994) (citing *Aetna Casualty & Surety Co. v. Gosdin,* 803 F.2d 1153, 1160 (11th Cir.1986)).

Motions for new trial may also be brought on the basis of erroneous or prejudicial jury instructions. *Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018). "New trials should be granted '[i]f the instructions do not accurately reflect the law and do not correctly instruct the jury so that [the court] [is] left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.'" *Hardin v. City of Birmingham*, No. 2:21-CV-1002-AMM, 2024 WL 3914835, at *4 (N.D. Ala. Aug. 2, 2024), *appeal dismissed sub nom. Hardin v. Birmingham, City of*, No. 24-12708-DD, 2025 WL 518229 (11th Cir. Jan. 30, 2025). "So long as the jury instructions and verdict form 'accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed.'" *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1072 (11th Cir. 1996).

III.    **Discussion**

A. **Admission of the audio portion of Ms. Zaragoza's cell phone video and portions of Ms. Zaragoza's video deposition did not result in substantial prejudice to Mr. Victor.**

**i. Audio from Ms. Zaragosa's cell phone video and video deposition does not constitute hearsay and/or meets an exception to the hearsay rule and is relevant to the Fourth Amendment Excessive Force and Qualified Immunity issues.**

Ms. Chisesi claims this Court made evidentiary errors, which resulted in substantial prejudice to Mr. Victor, violating his substantial rights and thus necessitating a new trial. (Doc. 115). She argues the audio portion of Ms. Zaragosa's cell phone video should have been excluded because the audio constitutes hearsay without a proper exception under the Federal Rules of Evidence. In her motion, Ms. Chisesi defines Ms. Zaragosa's statements made in the cell phone video about what was happening and what people did at the scene as "classic hearsay" but does not expand that argument. (Doc. 115, PageID.1447). She further argues that Deputy Hunady's claimed non-hearsay purpose for Ms. Zaragosa's statements is irrelevant because the Fourth Amendment objective reasonableness inquiry focuses on officer conduct not a bystander's "subjective impressions." (Doc. 115, PageID.1448). Regarding Ms. Zaragosa's deposition testimony, Ms. Chisesi contends Ms. Zaragosa's statements relaying her perception of the event – what she saw and heard - are hearsay or at the very least irrelevant to the objective reasonableness analysis for the same reason. (*Id*. at PageID.1448). Ms. Chisesi asserts that allowing Ms. Zaragosa's perspective to reach the jury, through audio, mislead and confused the jury resulting in unfair prejudice.

The undersigned finds Ms. Chisesi's arguments unavailing. First, Ms. Zaragosa's statements in the cell phone video and video deposition are either not hearsay or fall under the excited utterance exception to the hearsay rule. *See* Fed. R. Evid. 801(c) and 803(2).

Second, the audio is relevant to the Fourth Amendment excessive force claim, and Deputy Hunady's qualified immunity defense, which were issues at the trial. The question in a Fourth Amendment reasonableness test is: "whether the officer's actions are objectively reasonable in

light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Hardin v. City of Birmingham*, No. 2:21-CV-1002-AMM, 2024 WL 3914835, at *5 (N.D. Ala. Aug. 2, 2024), *appeal dismissed sub nom. Hardin v. Birmingham, City of*, No. 24-12708-DD, 2025 WL 518229 (11th Cir. Jan. 30, 2025). In other words, what was reasonable for Deputy Hunady to fear? To answer that question, the court must look to the facts and circumstances Deputy Hunady faced. *Barnes v. Felix* instructs that the court is to look at the totality of the circumstances for assessing reasonableness of use of force. *Barnes v. Felix*, 605 U.S. 73, 145 S. Ct. 1353, 221 L. Ed. 2d 751 (2025). Qualified immunity presents a question of law and "resolution of this question can sometimes turn on issues of fact." *Simmons v. Bradshaw*, 879 F.3d 1157, 1163 (11th Cir. 2018). "The question of what circumstances existed at the time of the encounter is a question of fact for the jury." *Id*. at 1165.

Here, there were contested issues of fact concerning the circumstances Deputy Hunady faced at the time of the incident. Ms. Zaragosa was a witness to the circumstances confronting Deputy Hunady immediately preceding and at the time of the shooting. Thus, Ms. Zaragosa's statements about what she saw and heard are relevant to the excessive force and qualified immunity issues. Ms. Chisesi's agreement to use the compilation video as a visual aid for the jury suggests the relevance of Ms. Zaragosa's cell phone video for determining the facts and circumstances that existed at the time of the encounter. Ms. Zaragosa's statements in the cell phone video do not change what can be seen by the jury in the video or change the fact that Mr. Victor was unarmed, which the jury knew prior to watching the video.

### ii. Exclusion of audio from Ms. Zaragosa's cell phone video and video deposition is not required under Federal Rule of Evidence 403.

Ms. Chisesi suggests that even if Ms. Zaragosa's statements from the cell phone and deposition videos are relevant, Rule 403 requires exclusion of the audio because of prejudice, confusion and

misleading the jury. Under Rule 403, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. "Although Rule 403 should be relied on 'very sparingly,' the trial court has wide discretion whether to exclude evidence under it." *Wilson v. Attaway*, 757 F.2d 1227, 1242 (11th Cir. 1985) (citations omitted). "Rule 403 objections, like other objections to the admission of evidence, are preserved only if they are timely and state 'the specific ground of objection, if the specific ground was not apparent from the context.'" *Id*. Ms. Chisesi made Rule 403 objections for both the video deposition, and the cell phone video in her motions in limine. At trial, she objected to the videos based on prior objections.

The probative value of Ms. Zaragosa's cell phone video and deposition testimony is not outweighed by unfair prejudice, confusing the issues or misleading the jury. Ms. Zaragosa's perception that Deputy Hunady was presented with deadly force is consistent with other eyewitness testimony. This testimony is not prejudicial because it was known that Mr. Victor did not have a weapon. This was an agreed fact. Ms. Chisesi's own witnesses testified about whether Mr. Victor had a weapon. Mr. Felks testified that he thought Mr. Victor had a weapon. After retreating from Mr. Victor's vehicle, Mr. Felks got behind the tire of a van. Mr. Felks also testified that Mr. Victor's hands were pointing upwards towards everyone after Mr. Victor got out of his vehicle. Deputy Dinkins read a report he prepared on May 13, 2017 for the Baldwin County Sherriff's department, which included a statement that he was advised to "stay back" from the scene until another deputy arrived because the sheriff's office received information about Mr. Victor having a weapon. Deputy Dinkins agreed it was an intense situation, and he identified non-law enforcement taking cover behind a van.

9

Ms. Chisesi fails to show what makes Ms. Zaragosa's testimony prejudicial, confusing and/or misleading to the jury and not the testimony of Ms. Chisesi's witnesses, Mr. Felks and Deputy Dinkins, or any other witness' testimony about his or her perceptions that Mr. Victor had a weapon. Ms. Chisesi clearly allowed other evidence in this regard, as she did not object and has not raised such evidence as an issue in her motion for new trial. The undersigned also does not find there to be an emotional element to Ms. Zaragosa's testimony that overshadows the objective reasonableness standard for the jury by the fact that Ms. Zaragosa made statements about what she saw and heard immediately prior to the shooting.

Ms. Zaragosa's statements are probative of both the Fourth Amendment excessive force issue and the qualified immunity issue at the trial. With the foregoing in mind, the undersigned finds no evidentiary errors were made at trial, and thus, Ms. Chisesi's substantial rights were not affected by the undersigned allowing into evidence audio from Ms. Zaragosa's cell phone and deposition videos. Accordingly, a new trial on the basis of evidentiary errors is not warranted.

**B. Attaching Qualified Immunity Interrogatory Questions with the Jury Verdict Form did not cause substantial prejudice.**

Ms. Chisesi claims the qualified immunity special interrogatories attached to the verdict form confused and mislead the jury, influencing the jury deliberations in a way that could have substantially prejudiced Ms. Chisesi. She argues the interrogatories were inconsistent with and undermined the general charge, and interrogatory number eight was a mixed law and fact question for which a legal standard was not provided.

Permitting Deputy Hunady to submit special interrogatories to the jury for the purpose of his qualified immunity defense is in accordance with Eleventh Circuit precedent. When a government official's motion for summary judgment on qualified immunity grounds fails, the qualified

immunity defense remains intact and proceeds to trial. *Simmons,* 879 F.3d at 1163. The facts upon which summary judgment was based "are no longer binding", *Id*. at 1164, "and the jury proceeds to find the relevant facts bearing on qualified immunity." *Id*. Therefore, at the trial, the court uses the jury's factual findings to make its final "legal determination as to whether it would be evident to a reasonable officer, in light of clearly established law, that his conduct was unlawful in the situation he confronted." *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "'Where the defendant's pretrial motions are denied because there are genuine issues of fact that are determinative of the qualified immunity issue, special jury interrogatories may be used to resolve those factual issues." *Simmons*, 879 F.3d at 1164. Pursuant to Federal Rule of Civil Procedure 49(b), "the court may submit to the jury forms for a general verdict, *together with* written questions on one or more issues of fact that the jury must decide." Fed. R. Civ. P. 49(b)(1) (emphasis added). When the questions determine issues of fact concerning qualified immunity, the term qualified immunity is not to be used in the questions. *Simmons*, 879 F.3d at 1165.

In the instant case, the Eleventh Circuit noted on appeal that there was a factual issue as to whether Mr. Victor displayed aggressive, shooter's-type behavior after exiting the vehicle and advancing toward the officers. The Eleventh Circuit dismissed Deputy Hunady's appeal because it lacked jurisdiction to determine the factual question of what happened, and whether the video footage had been correctly interpreted. After all evidence was presented at trial, there remained conflicting facts as to the reasonableness of Deputy Hunady's actions and force used. There was also the qualified immunity issue, and the conflicting fact about how Mr. Victor exited the vehicle and approached the officers. Thus, special interrogatories were appropriate and necessary.

Counsel for Deputy Hunady submitted to the undersigned proposed jury charges and a verdict form with special interrogatories prior to trial. Counsel for Ms. Chisesi also submitted proposed jury charges and proposed the undersigned use the verdict form found in the Eleventh Circuit's Pattern Instructions under Appendix A entitled "Civil Rights – Special Interrogatories – 42 U.S.C. §1983." Ms. Chisesi's proposed verdict form did not include special interrogatories, and she did not pose any real objection to Deputy Hunady's proposed interrogatories until the undersigned, in preparation for the charge conference, discussed the verdict form with counsel and the parties on the second day of trial. The use of special interrogatories for inclusion in the verdict form was again discussed at the charge conference. Counsel for Deputy Hunady were instructed to prepare a new set of interrogatories to be presented to counsel for Ms. Chisesi. The following special interrogatories were approved and included in the final verdict form:

> 1.      Was Deputy Hunady informed that Jonathan Victor was possibly armed with a weapon?
> 2.      Did Mr. Victor get out of his car in an aggressive manner?
> 3.      Were Mr. Victor's hands covered in a way that obscured what he was holding in his hands?
> 4.      Was Mr. Victor standing in a manner that could appear to be a shooter-type stance?
> 5.      Did Mr. Victor fail to comply with Deputy Hunady's commands to stop his advance?
> 6.      Did Mr. Victor verbally refuse to drop what he was holding in his hands?
> 7.      Did Mr. Victor fail to comply with Deputy Hunady's commands to drop what he was holding in his hands?
> 8.      Do you find that Deputy Hunady perceived that Mr. Victor posed an imminent threat of serious physical harm to himself or others when he used deadly force?

As the Eleventh Circuit instructs in *Simmons*, denial of a request for special interrogatories to resolve factual issues would have been error. *Simmons*, 879 F.3d at 1164. The special interrogatories were clearly intended to follow the Eleventh Circuit's direction regarding the factual issues to be resolved by the jury to inform the final decision on qualified immunity.

### i. The Special Interrogatories were not inconsistent with and did not undermine the general charge.

Ms. Chisesi argues the verdict form caused the jury to be pulled in two directions because the jury read the objective standard of the general charge and questions that asked about Deputy Hunady's subjective perceptions; therefore, this inconsistency created confusion, which was prejudicial. (Doc. 115, PageID.1455).

Ms. Chisesi's argument is based purely on speculation that the jurors did not follow the court's instructions on the verdict form and proceeded to consider and discuss answers to the special interrogatories. Ms. Chisesi contends that because the interrogatories were in the jury packet during deliberations, the juror's exposure to the wording that referenced what Deputy Hunady perceived influenced the jury's objective-only liability analysis. (Doc. 115, PageID.1455). No evidence has been presented showing the jurors disregarded the undersigned's instructions and considered the special interrogatories. The first page of the verdict form includes the following instruction: "If you answered "No," skip to the end and sign the verdict form. If you answered "Yes," proceed to the next question." (Doc. 110). The jury selected "No." (*Id*.). Ms. Chisesi argues in her brief that when a jury deliberates, "the checkboxes become their guiding framework." Based on this logic, it is reasonable to believe that if the instructions guided the jurors not to proceed to the next question if they answered "No," then they would not have discussed and deliberated over answers to the special interrogatories.

Even though the interrogatories were read to the jurors prior to deliberations, the interrogatories would not confuse or mislead the jury when deciding the merits of Ms. Chisesi's claim. The questions did not ask about Deputy Hunady's personal intent, motivation or subjective feelings. Instead, the questions posed sought to resolve the contested factual issues underlying the qualified immunity defense. It is difficult to grasp how the interrogatories encouraged the jurors

to ignore the clearly explained legal standards for the excessive force claim in the jury instructions, or how they confused or mislead the jury into returning a verdict in favor of Deputy Hunady. In the Eleventh Circuit, it is well-settled that the district court should not submit qualified immunity to the jury because it is a matter of law for the court to decide. Therefore, following Eleventh Circuit precedent, the jurors did not receive instructions on the qualified immunity issue, nor were the interrogatories to be answered determinative of the qualified immunity issue.

Ms. Chisesi also contends the proper approach for using special interrogatories was to withhold or seal them unless and until the jury first determined liability for the Defendant. This argument is found to be without merit. Ms. Chisesi provides no authority supporting her argument, and the undersigned has not found any upon which it can rely. Rule 49 states that written questions can be submitted "together with" the general verdict form. Fed. R. Civ. P. 49(b)(1).

**ii. Special Interrogatory number eight was not a mixed law and fact question.**

Ms. Chisesi claims interrogatory number eight "posed an unresolved mixed law and fact question without legal definitions" and "embedded a perception-based formulation that is foreign to the governing rule, thereby likely confusing the jury during deliberations." (Doc. 115, PageID.1457). That argument is rejected. Interrogatory number eight is a question of fact. When preparing interrogatory number eight, the court looked to *Hardin*. In *Hardin*, the special interrogatory asked whether "Officer Mitchell perceived that Mr. Moore posed an imminent threat of physical harm to the officers or others at the time that Officer Mitchell shot Mr. Moore and Ms. Hardin[.]" *Hardin*, 2024 WL 3914835, at *3. The district court in *Hardin* explained that the interrogatory does not ask the jury to determine the objective reasonableness of the officer's actions. Like *Hardin*, interrogatory number eight in this case does not ask whether Deputy Hunady's perceptions and actions were objectively reasonable under the circumstances, it instead

14

asks whether Deputy Hunady perceived that Mr. Victor (under the facts determined by the jury in questions one through seven) posed an imminent threat of serious physical harm to himself or others when Deputy Hunady used deadly force. *Hardin*, 2024 WL 3914835, at *6. "[T]he jury itself decides issues of fact that are determinative of the qualified immunity defense but does not apply the law of qualified immunity to those facts." *Hardin*, 2024 WL 3914835, at *6 (citing *Bailey v. Swindell*, 89 F.4th 1324, 1329 (11th Cir. 2024)). Interrogatory number eight does not conflate the objective reasonableness and qualified immunity analyses.

Ms. Chisesi also argues the jury was not instructed on what the law considers imminent threat. The jury found that Deputy Hunady did not use excessive force, and therefore, it is immaterial whether the jury was properly charged on the issue of imminent threat. (*see Phillips v. Irvin*, No. CIV.A.05-0131-WS-M, 2007 WL 2570756, at *13 (S.D. Ala. Aug. 30, 2007).

### iii. The court's use of special interrogatories does not require a new trial.

Motions for new trial on the basis of erroneous and prejudicial jury instructions are within the court's discretion and are reviewed only for abuse of discretion by appellate courts. "New trials should be granted "[i]f the instructions do not accurately reflect the law and do not correctly instruct the jury so that [the court] [is] left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Hardin,* 2024 WL 3914835, at *4. Here, the jury was correctly instructed on the Fourth Amendment excessive force claim but was not instructed on the qualified immunity issue. The Federal Rules of Civil Procedure and Eleventh Circuit instructions prompted the use of special interrogatories to resolve issues of fact concerning the qualified immunity defense.

Accordingly, it is determined that the special interrogatories in no way prejudiced Ms. Chisesi; thus, a new trial on that basis is not necessary.

15

## IV.    Conclusion

For the foregoing reasons, Ms. Chisesi's Motion for New Trial is **DENIED**.

**DONE** and **ORDERED** this 14th day of January 2026.

**s/ WILLIAM E. CASSADY**
**UNITED STATES MAGISTRATE JUDGE**
